GEGARE and wife, Respondents, vs. FOX RIVER LAND & LOAN COMPANY, Appellant.

*January 31—March 11, 1913.*

*Trial: Special verdict: Omissions: Finding by court presumed: Insurance against fire: Undertaking of agent to procure insurance: Liability thereon: Negligence: Consideration: Evidence: Appeal: Harmless error.*

1. Under sec. 2858m, Stats., the trial court will be presumed to have found in favor of the respondent upon a material issue of fact not covered by the special verdict, if there was evidence

sufficient to support such a finding and the appellant failed to ask the submission of pertinent questions.

2. Although, in general, an insurance agent who is requested to write insurance and undertakes to do so may not assume any obligation further than to endeavor to write the policies in companies which he represents and, if they refuse to carry the risk, to promptly advise his client to that effect, yet under peculiar circumstances his obligations may be greater.

3. Plaintiffs in this case had just purchased real estate, and defendant, a corporation doing a loan and insurance business, was making a mortgage loan thereon which was to be secured by insurance. Plaintiffs' grantor held policies in mutual companies, which were to be assigned to plaintiffs, but defendant objected thereto and undertook to place $2,000 of insurance in good companies. In the meantime it secured assignments of the mutual policies to plaintiffs and intended to keep such insurance if it could not procure enough in old line companies. It was unable to place more than $1,000 in old line companies, but after it knew that fact it held the mutual policies for two weeks without taking any steps to have the assignments thereof validated by approval of the companies; at the end of which time the building was burned. *Held*, that defendant was liable for the loss resulting from its negligence in failing to keep the mutual insurance in force.

4. The possibility that the mutual companies might not have approved the assignments of the policies because the property was mortgaged, did not excuse a failure to try, especially as the policies were already in terms payable to a former mortgagee.

5. The ruling out of this question put to one of defendant's officers: "Did you make an effort to get insurance on the property?" was not prejudicial under the circumstances, especially as the same witness was permitted to state that $1,000 was all the old line insurance he could get.

6. It appearing that the conveyance of the property to plaintiffs, the making of the loan, and the arrangement as to insurance were all parts of one entire transaction; that defendant received certain fees and commissions thereon; and that the mortgage provided that the insurance should be in companies approved by the defendant, these facts show a sufficient consideration for the defendant's promise to place the insurance.

APPEAL from a judgment of the circuit court for Brown county: S. D. HASTINGS, Circuit Judge. *Affirmed.*

This action was brought by the plaintiffs to recover dam-

ages sustained by reason of the alleged failure of the defendant to place insurance upon property of the plaintiffs as agreed, the property having been destroyed by fire. The jury returned the following special verdict:

"(1) Did the defendant, represented by John M. Boland, one of its officers, promise the plaintiffs to keep the property described in the complaint insured for $2,000 for a year or more? A. Yes.

"(2) If you should answer the first question 'Yes,' then answer this: Did the plaintiffs agree to pay said defendant for keeping said property so insured, anything more than the premiums to be paid for the policies? A. No.

"(3) If you should answer the first question 'Yes,' then answer this: What was the fair market value of said building at the time it was destroyed by fire, February 28, 1911? A. $1,600.

"(4) Did the plaintiff *Delia Gegare,* when told by Mr. Boland that defendant could procure only $1,000 insurance on the building, tell him that if $1,000 was all that he could get, let it go at that? A. No."

Judgment was awarded in favor of the plaintiffs and defendant appeals. The other essential facts in the case will be found in the opinion.

For the appellant there was a brief by *Kittell & Burke,* attorneys, and *T. P. Silverwood,* of counsel, and oral argument by *J. A. Kittell.*

For the respondents there was a brief by *Kaftan & Reynolds,* and oral argument by *R. A. Kaftan.*

Barnes, J. The complaint was framed on the theory that the defendant unqualifiedly agreed to keep the burned building insured in the sum of $2,000 and that it became liable as an insurer to that extent. The answer alleged that defendant was requested to procure old line insurance for the plaintiffs to the amount above stated; that defendant agreed to do so if it could; that it exercised due diligence in endeavoring to procure the insurance and was unable to do so; and that its promise in any event was *nudum pactum* and therefore void.

The case was submitted to the jury on the theory outlined in the complaint. The court in its instructions under the first question in the special verdict plainly told the jurors that the question must be answered in the negative unless they found that defendant *"absolutely"* agreed to keep the property insured in the sum stated, and further, that it must be so answered if they found that the defendant was merely employed as agent of the plaintiffs to secure the insurance.

As we read the opinion of the learned trial judge on the motions to set aside the verdict and for judgment thereon, made by the respective parties, he became convinced that the evidence would not sustain a finding that there was an absolute contract to keep the property insured, but that it did show that defendant for a sufficient consideration agreed to act as the agent of the plaintiffs in procuring the insurance; that defendant was not restricted to old line insurance; that it failed to exercise reasonable diligence in procuring the insurance and that it was therefore liable for its negligence.

We think the trial court was clearly right in finally holding that the evidence failed to show that defendant made itself liable as an insurer, and we will dismiss this question without further consideration.

The real vital question in the case, to wit, the negligence of the defendant, was not submitted to the jury for determination. This, however, is not necessarily fatal to the judgment, because the defendant made no request that such a question should be submitted. If there was sufficient evidence to justify the court in finding that the defendant failed to exercise reasonable diligence, then we must presume that such a finding was made in support of the judgment. Sec. 2858*m,* Stats. It may not be always logical or accurate to indulge in such a presumption, but the law is explicit. There really has been no jury trial in this case, but the defendant, if it so elected, might have preserved its right to have such a trial by requesting the submission of pertinent questions.

The case presents three questions of major importance as

well as some minor ones.   The substantial questions are:
(1) Was the defendant precluded from showing that it exer-
cised due diligence in endeavoring to procure the insurance?
(2) Did the evidence warrant the court in finding that such
diligence had not been used?    (3) Was there sufficient con-
sideration to support the defendant's promise?

A number of the facts apply to both the first and second
questions suggested, and they will be discussed together.   An·
adverse ruling on a question propounded to a witness sworn
on behalf of the defendant is made the basis for the claim that
it was not permitted to litigate the question on which it was
finally beaten.   The ruling will be discussed later.

Prior to February 4, 1911, one Fischer was the owner of
the building that was afterwards burned as well as of the land
on which it stood.   On this date plaintiffs purchased the
premises from him.   They applied to the defendant for a
loan of $1,900 on a mortgage to be given on the property pur-
chased and on other real estate.   The mortgage was taken in
the name of one of defendant's officers, although it appeared
from the evidence that it was in fact taken for a client.   The
defendant was engaged in the insurance business.   A large
part of the value of the property purchased and mortgaged
was in buildings, and it fairly appears that the mortgagee de-
sired to be secured by insurance policies in solvent companies.
At the time of the sale Fischer had the buildings insured for
$1,800 in three mutual · companies, each carrying $600.
These companies were the Theresa Village Mutual Fire In-
surance Company, the Sheboygan Falls Mutual Fire Insur-
ance Company, and the Kewaskum Mutual Fire Insurance
Company.   Apparently the companies were all authorized to
do business in Wisconsin.   Each of these policies was made
payable in case of loss to one Caroline Hollman, mortgagee,
and each contained a provision that the policy should be void
if the title of the insured was other than that of sole and un-
conditional ownership.   Fischer apparently had arranged to

assign these policies to the plaintiffs, and they show that he did assign them on the same day that the property was sold, although the evidence shows that the assignment was in fact executed a few days later. The defendant's officers, according to plaintiffs' evidence, at once objected to these policies, saying that mutual insurance in general was no good and that these policies were no good, and that in any event such insurance was undesirable owing to the liability for assessments, and that they desired to have the insurance placed in old line companies. At this point the parties diverge in giving their version of what took place. In substance the defendant's contention is that it agreed to place $2,000 insurance on the property in old line companies if they would take it; that reasonable efforts were made to place the insurance, but that only $1,000 could be secured; and that the plaintiff *Delia Gegare* was duly notified of this fact and she said to let it go at that. The plaintiffs' evidence tended to show that they wanted the mutual policies continued if they were good; otherwise they wanted $2,000 insurance that was good on the property, and that defendant agreed to see that such insurance was placed thereon. *Mrs. Gegare* denied that she told defendant's officer that they would be satisfied with $1,000 insurance. The circuit judge in his opinion said that under his instructions the jury in answering the first question must have found that the defendant's promise was not confined to old line companies, but that it was its duty to secure mutual insurance, at least if the other kind could not be obtained, and such no doubt was his own conclusion on the evidence.

We think the evidence is sufficient to sustain a finding of either court or jury that the defendant undertook to place $2,000 insurance in solvent companies, and that reasonable diligence under the peculiar facts of this case required it to make an attempt at least to validate the mutual insurance policies.

The three mutual policies were left with the defendant.

According to the testimony, it knew as early as February 14th that it could not place more than $1,000 insurance in old line companies. By this time it had secured an assignment of the mutual policies from Fischer running to the plaintiffs. The fire did not occur until February 28th. Mr. Boland, secretary and treasurer of the defendant, testified that when he first procured the assignments he intended to use them so as to get whatever return premium might be coming on the policies. Also that he had another idea in mind: "Possibly to use them for *Mr. Gegare* in case all of our old line insurance would be canceled. At that time we had old line insurance. . . . About a week or two before the fire I got the idea we might have to have the mutual companies." "*Q.* You intended to take advantage of these old policies if you couldn't get old line insurance? *A.* We did." "About the middle of February we learned we could not get over $1,000 old line insurance."

So we have the admission of defendant's officer that for two weeks after he knew he could not get more than $1,000 old line insurance he kept in his possession the three mutual policies duly assigned to the plaintiffs and that during that time he never made a single move to have any one of the companies approve of the assignment, the only step necessary to make the policies binding. It is suggested in the argument that the companies might not have approved of the assignment because the property was mortgaged. This was no excuse for not trying. At best it would be a poor excuse, because the property was also mortgaged when Fischer procured the insurance and it was made payable to the mortgagee. There is not a syllable of evidence in the case tending to show that any of the mutual companies named were insolvent.

We do not wish to be understood as holding that an insurance agent who is requested to place insurance and undertakes to do so assumes any obligation further than to endeavor to

write the policies in the companies which he represents and, if they refuse to carry the risk, to promptly advise his client to that effect.   But there is evidence here strongly tending to show a peculiar and unusual condition.   According to their evidence the plaintiffs desired to carry the insurance already on the property.   They had apparently arranged to purchase the insurance from Fischer for the unexpired term of the policies.   Defendant, an insurance agent and practically mortgagee of the property, was in a position to dictate and did dictate the kind of insurance that should be carried, and undertook to supply something good for that which was claimed to be bad or doubtful.   It was an easy matter to ask the insurance companies to approve of the assignments of the policies and a dangerous one to give up something that was available until it was known that something better was obtainable.   It was almost inexcusable not to have done anything with these policies between the middle of February, when it was known that old line insurance could not be secured, and the last of the month, when the property burned. The insurance companies were the only ones who profited by the delay, as time was running on the policies and there was no liability thereunder.   These statements are based on the evidence offered in plaintiffs' behalf which the court and jury had the right to believe, as well as some of the defendant's evidence.   An insurance agent who loans money has the right to dictate the character of the insurance he will accept or to refuse to make the loan.   When he insists that the borrower make a change and he agrees to procure something better and holds the old insurance in abeyance to await results, we see little reason for acquitting him of negligence under such facts as appear in this case.   The plaintiffs wanted insurance and had no preference between the old line and mutual kind, so long as it was good.   Defendant evidently intended to secure old line insurance if it could, but if it could not it intended to keep all or a sufficient part of the mutual insurance to make

up the necessary quantum.    It forgot to have the assignments approved, and we think should suffer for its forgetfulness rather than the plaintiffs.

This question was asked of Henry Boland, an officer or employee of the defendant: *"Q.* Did you make an effort to get insurance on the property ? *A.* Yes.    Objection as incompetent, irrelevant, and immaterial, and motion to strike out answer.    Court: I don't know that that is material.    Sustained. Exception."

It is said that this ruling is erroneous and prevented the defendant from showing that it used due diligence.    The question was proper as a preliminary one.    The evidence already showed that defendant was unable to write the insurance in companies which it represented.    A representative of one of the other insurance agencies had also testified that such agency had been solicited to write the insurance and had declined.    The above question was not important unless it deterred the defendant from inquiring as to what diligence had been used.    It was not deterred to any great extent.    Almost immediately after the above ruling was made this question was asked of the same witness: *"Q.* Was $1,000 all the old line insurance you could get on that property ? *A.* That was all." Objection was made to this question and a motion was made to strike out the answer, and the court held the testimony was proper.

The error complained of was wholly immaterial.    It may be conceded that defendant made every reasonable or even conceivable endeavor to place old line insurance.    Its averment in its answer and its attitude on the trial from beginning to end was that its agreement related to old line insurance only.    The testimony of the secretary and treasurer of the company heretofore quoted, as well as other testimony in the case, conclusively shows that no effort or attempt was made to procure mutual insurance or to validate the existing mutual policies.    This is the negligence which we must presume was found by the court.

Does the evidence show a good consideration for the con-

tract? The fact that plaintiffs had arranged for the mutual insurance and had agreed to a change at defendant's solicitation and in reliance upon its promise and that they have suffered a loss in consequence would in itself go far toward furnishing a sufficient consideration to support the promise, because a consideration may consist of a benefit to one party to a contract or a loss or detriment to the other. *Messenger v. Miller,* 2 Pin. 60; *Eycleshimer v. Van Antwerp,* 13 Wis. 546. Besides, the defendant was an insurance agent, and presumably would receive the usual commission on so much of the insurance as it placed, as well as the usual broker's commission if written by some other agent. The conveyance of the property, the making of the loan, and the arrangement in reference to the insurance all took place at the same time and were parts of one entire transaction. Defendant received a commission of $38 for making the loan and $2.25 for drawing conveyances. It also received $8.50 for abstracts, but it does not appear whether these were prepared by defendant or the money was due to someone else who had prepared them. The mortgage provided that the property was to be insured in companies approved by the defendant; so that it practically had the power to dictate the companies in which the insurance would be placed and to prevent the plaintiffs from procuring any insurance that would not receive its O.K. These facts show a sufficient consideration for the defendant's promise. They are much stronger than those shown in *Rainer v. Schulte,* 133 Wis. 130, 113 N. W. 396, where a recovery was upheld against a party who had agreed to place insurance and then neglected to do so for a period of two days.

The foregoing disposes of all of the questions which we deem it essential to discuss. The opinion has already been carried to a greater length than the importance of the questions involved would seem to justify.

*By the Court.*—Judgment affirmed.

SIEBECKER, J., dissents.