## TONINI v. THURMAN.

No. 30076. March 30, 1943.

Rehearing Denied May 11, 1943.

*136 P. 2d 909.*

Rittenhouse, Webster, Hanson & Rittenhouse and Frederick A. Baird, all of Oklahoma City, for plaintiff in error.

E. L. Richardson, of Lawton, and L. Kerans Moore, of Chicago, Ill., for defendant in error.

DAVISON, J. This cause is presented on appeal from the district court of Comanche county, Okla. In its present aspect it involves the alleged liability of a mortgagee for asserted wrongful failure and neglect to have an insurance policy covering improvements on the mortgaged real estate changed for the benefit of a purchaser thereof.

The action as instituted was one for the foreclosure of mortgages. However, as indicated, its character has changed.

While the development of the litigation is not a controlling factor in this appeal, a brief summary thereof will lead to a better understanding of the controversy as now presented to this court.

On the 27th day of July, 1939, Laura Tonini, as plaintiff, filed her petition against L. B. Bybee, Margaret Bybee, the North River Insurance Company of New York, a corporation, Leila Thurman, Alice M. Routh, George I. Routh, C. C. Goble, William L. Royse, and E. L. Richardson, as defendants.

The petition included two causes of action. The first sought foreclosure of a real estate mortgage as well as personal judgment against certain of the defendants on the debt secured thereby. The second sought similar relief in conjunction with a chattel mortgage.

The controversy here involved is directly connected with the real estate mortgage. Thus further reference to the first cause of action and the matters therein concerned is warranted.

The real estate mortgage covered lands situated in Comanche county. It was executed and delivered to the plaintiff, Laura Tonini, on the 15th day of February, 1938, by the defendants L. B. Bybee and Margaret Bybee to secure the payment of a debt evidenced by a promissory note for $9,000 of even date therewith.

The mortgage as executed contained a clause whereby the mortgagors agreed to keep buildings erected on the land insured against loss and damage by tornado, fire and hail, and that the insurance should be assigned and delivered to the mortgagee. It contained a further provision that in the event of failure on the part of the mortgagors to procure and maintain insurance the mortgagee might, but was not obligated to, do so, and add the cost thereof to the mortgage debt.

In accord with the provision of the mortgage the mortgagor, L. B. Bybee, procured a policy of fire insurance from the North River Insurance Company which included coverage on a barn on the premises to the extent of $600 in which he was recognized as the owner and the plaintiff as the mortgagee. This policy was procured in April of 1938, when a previous policy had expired. The policy contemplated protection of

the mortgagee in case of loss. It also contained provisions relieving or purporting to relieve the insurance company from liability in case of transfer of ownership. The insurance policy was delivered to the mortgagee.

On September 9, 1938, the Bybees sold the mortgaged property to Leila Thurman, who assumed the payment of the mortgage.

On September 19 (1938) the barn on the premises burned.

The insurance company denied liability to Leila Thurman but made a settlement with the mortgagee, Laura Tonini, in satisfaction of her interest in the burned barn.

Subsequently the action to foreclose the mortgage was instituted and in connection therewith Leila Thurman was one of the defendants against whom personal judgment was sought. Incidentally, she had sold the property to Alice Routh subsequent to the destruction of the barn but prior to the institution of the foreclosure proceeding.

In the mortgage foreclosure proceeding, Leila Thurman filed an answer and cross-petition in which she sought to recover from the mortgagee compensatory damages in the sum of $1,000 and exemplary damages in the sum of $5,000 for the alleged willful neglect and failure of the plaintiff mortgagee to request and cause the insurance company to change its insurance in such a manner as to protect her as purchaser of the mortgaged premises. The gist of the complaint as asserted in the cross-petition is expressed in the following excerpt from the same:

"In the sale of the property of the said Bybee to this defendant, he sold his interest in the insurance policy to this defendant and thereafter notified plaintiff of the sale of the said Bybee to this defendant, and requested the plaintiff to take the insurance policy to the agent of the company writing it, who resided at Oklahoma City, which was also the home of the plaintiff, and have the insurance company, towit, the defendant, the North River Insurance Company of New York, to note the change of ownership, so as to protect this defendant in the event of fire, but the plaintiff willfully and negligently refused and failed to do so, or do anything to protect the interest of this defendant, under the said policy, and that thereafter, this defendant, while believing she was protected under the same, sustained a loss by fire . . . "

To this cross-petition the plaintiff filed her reply in which she in substance denied that she was under any duty imposed by law or assumed by contract to effectuate a change in the policy.

The cause came on for trial before a jury in November of 1939. In the course of the trial Alice M. Routh and Gary Routh tendered an amount sufficient to reinstate the mortgage which was accepted by the mortgagee and the features of the case involving the mortgage foreclosure were eliminated, leaving only the dispute between the plaintiff and the defendant Leila Thurman to be determined.

The issues between these two were submitted to the jury, which returned a verdict in favor of the cross-petitioning defendant for $600 compensatory damages and $1,500 punitive damages. Judgment was entered on the verdict.

The plaintiff presents the cause on review, appearing herein as plaintiff in error. The order of appearance is thus preserved in this court.

In support of the judgment of the trial court and the theory upon which recovery was therein permitted, counsel for the defendant summarize their position and the issues of law involved as follows:

"Our position is that it was the duty of Tonini to request the insurance company to note the change in ownership of the property, upon being advised of the transfer of title, even without a request, and more particularly after being requested to do so.

"The appellant's position is that Tonini owed no duty to Thurman to ask the insurance company to consent to

the transfer in ownership, with or without notice, with or without request. This is the nerve of the lawsuit.

"We say that under the statutes of this state the insurance was pledged as additional security for the payment of the mortgage debt, and that the pledgee was bound to exercise at least reasonable care for the protection of the thing pledged, and that this duty arose when he received notice of the change of ownership in the property, with or without request from the purchaser.

"We say that Bybee, the original pledgor, had the right to transfer his equity in the pledge, and that Thurman acquired his rights, and after notice to Tonini, he owed her the same duty he owed Bybee. Appellant says Thurman could not purchase Bybee's interest in the pledge, and that Thurman was a stranger to the transaction as far as Tonini was concerned, and that Tonini owed her no duty."

In connection with the position of the parties it is important to note that the testimony produced by the defendant supports the view that the mortgagee was requested to procure a change of the insurance, but does not indicate that the mortgagee agreed to procure the change.

Nor can such an agreement be inferred from any provision of the original contract as contained in the mortgage, for there the stipulation with reference to insurance was that it should be furnished by the mortgagor, the mortgagee having only an option to procure the same in the event the mortgagor did not insure the property as contemplated.

The defendant in support of the judgment refers to and invokes the statute with reference to pledges, without, however, calling our attention to any case in which an application of the rules of law relating to pledges was made to a situation such as is here presented with a result favorable to her position.

In connection with this phase of her argument, defendant calls our attention to the following rules from the texts indicated:

"Subject to the rights of the pledgee, pledgor may sell or assign his interest in the pledged property." 49 C. J. 967.

"Property under pledge may be transferred by the general owner, subject only to the lien. . . . After such notice the keeper ceases to be the agent of the vendor and becomes the agent of the vendee. . . ." Jones on Pledges, § 364.

Upon consideration of these rules it is urged that the insured could rightfully sell, assign, or transfer his interest, in the insurance policy because it was pledged.

Assuming (without deciding at this point) that the insurance contract was pledged, it does not follow that the foregoing rule generally applicable to pledges would be of benefit to the defendant. Any relationship between the parties to the mortgagee could not change the nature of the property pledged. If the debtor end of the insurance contract was unassignable before being pledged it remained unassignable afterwards.

The fact that a pledgor can ordinarily sell or assign his interest in pledged property while in the hands of a pledgee can only be applied to property which was of a nature subject to transfer or assignment before the pledge. The insurance policy before us was not that type of property.

In the case of Niagara Fire Ins. Co. v. Aebischer, 169 Okla. 551, 44 P. 2d 5, this court pointed out that a fire insurance policy is a personal contract between the company and the insured and that the company has the right to select its risks. A different risk cannot therefore be forced upon the company by assignment merely because the custody of the policy has been intrusted in another. The rule invoked by the defendant with reference to pledged property does not support the judgment of the trial court.

The defendant also, and in connection with her theory of pledged property,

cites the case of Ward v. Continental Insurance Corp., 165 Okla. 20, 24 P. 2d 654. That case was not predicated upon any rule relating to pledged property.

In some of its features it involves a situation comparable to the case at bar, but in its controlling aspect it presents an added feature which is not here present. There the mortgagee paid the premium on the policy after it became due with knowledge that the property had been transferred and that the new owner was depending on a continuation of renewal of the insurance by it. It thus undertook to retain insurance in force and effect on the property under its option to do so. It then called upon the new owner of the property to reimburse it for the premium paid. To these added facts which are not present in the case at bar, we attached controlling importance in the cited case. The basis of our holding in that case is clearly stated in the following excerpt from the opinion:

" . . . The mortgagee was given the right to pay the premium in case the owner failed to do so. Had it gone thus far and no farther, there might be justification for its position. But, when the premium came due, the mortgage company paid it with knowledge of the fact that plaintiff was then the owner of the property and was depending upon the mortgage company to notify the insurance company of the change in ownership. After having paid the premium, the mortgage company called upon plaintiff to reimburse it, which the plaintiff did."

Thus the duty of the mortgagee in that case arose from exercising the optional right to keep the property insured. This contingent duty was mentioned by the Court of Appeals of Kentucky in Warrener v. Federal Land Bank of Louisville, 266 Ky. 668, 99 S. W. 2d 817:

"The mortgage placed no duty or obligation upon the bank to insure the property. That duty rested upon the mortgagor, and he could not as a matter of legal power under the contract shift the responsibility to the mortgagee. But there was an option given the mortgagee 'to buy said insurance and pay the premiums therefor,' the same being payable by the mortgagor immediately, or, in default, chargeable as a further lien debt. It is elementary that a duty is a prerequisite to a liability. So long as there was but an unaccepted optional right there was no duty. It was for the bank to choose to exercise or not to exercise that right. Mammoth Garage v. Taylor, 220 Ky. 499, 295 S. W. 429; McQuilkin v. Ford, 101 Neb. 474, 163 N. W. 763; Spokane Merchants' Association v. Parry, 60 Wash. 204, 110 P. 991; Southern Building & Loan Association of Knox County v. Miller, 110 F. 35, 49 C. C. A. 21; Schafer v. Jackson, 155 Iowa, 108, 135 N. W. 622. . . . "

To reiterate: In the case at bar, the mortgagee had not assumed a duty by exercising its option to keep the property insured, whereas in the Ward Case, cited supra, it had.

The case of Union Savings Bank & Trust Co. v. Bedell, 74 Vt. 108, 52 Atl. 270, decided by the Supreme Court of Vermont, is quite instructive.

There, in violation of the provisions of the insurance contract, the mortgagor placed a second mortgage on the property while the policy was in the hands of the first mortgagee. It was then sought to hold the first mortgagee responsible for a subsequent loss. In disposing of the cause the Vermont court held that the first mortgagee was a custodian, not a pledgee, and owed no duty to keep the insurance in effect. It said:

"Bedell insists that the petitioner held the policy as a pledge or as collateral security, that it was the petitioner's duty to procure the consent of the insurer to be indorsed on the policy, and that, having failed to do so, the petitioner should account to him for the sum for which the property was insured.

"The petitioner did not hold the policy as a pledge or as collateral security. Bedell agreed to keep the property insured for the petitioner's benefit, and pursuant to that agreement, upon his own application, caused to be issued to himself a policy of insurance, wherein the loss, if any, was payable to the peti-

tioner as its interest might appear. He was bound to know the conditions upon which the policy was issued, and, while chargeable with such knowledge, by his own act, in giving a second mortgage without the consent of the insurer, violated a material condition of the policy, and thereby rendered it void. The petitioner's custody of the policy did not add anything to its security. By the terms of the policy, the loss, if any, was payable to it as its interest might appear; and, while the policy was issued to Bedell, and a suit at law for the recovery of the loss could only be brought in his name, the petitioner could control any execution issued on the judgment, until its claim was extinguished. Powers v. Insurance Co., 69 Vt. 494, 38 Atl. 148. Therefore its custody of the policy was wholly immaterial, except that the receipt of it informed the petitioner that Bedell had kept his agreement to the extent of having the property insured for its benefit. It was not the duty of the petitioner to see to it that Bedell did not by his own act render the policy void, nor, when he had done so, to procure other insurance. The duty of keeping the insurance good rested upon Bedell, and, before placing a second mortgage upon the property, he should have procured the consent of the insurer, or other insurance. Having omitted to do so, he cannot now charge the petitioner with the damage that has accrued to him by reason of such omission."

Other authorities dealing with the question and supporting in whole or in part the position of the appellant herein are McQuilkin v. Ford, 101 Neb. 474, 163 N. W. 763; Spokane Merchants' Association v. Parry, 60 Wash. 204, 110 P. 991; Rheuban v. Commercial Investment Trust, 81 N. H. 498, 128 Atl. 807, 41 A. L. R. 1280; see, also, general annotations, 41 A. L. R. 1283, 130 A. L. R. 598 and 36 Am. Jur. 851.

Upon consideration of the foregoing authorities we are of the opinion, and hold, that as a general rule, in the absence of an agreement to the contrary, a mortgagee is not obligated to keep the mortgaged premises insured, and the mere fact that the mortgagee is custodian of a policy procured by the mortgagor and has been requested to keep the premises insured does not impose upon him an obligation to do so.

The judgment of the trial court is therefore erroneous. Since there is no basis for the recovery of actual damages, the recovery of exemplary damages is also erroneous.

The cause is reversed, with directions to enter judgment for the plaintiff in error herein (plaintiff in the trial court).

CORN, C. J., GIBSON, V. C. J., and OSBORN, BAYLESS, HURST, and ARNOLD, JJ., concur. RILEY and WELCH, JJ., absent.