ATWOOD C. HASSELL *et al.*, Plaintiffs-Appellants, *v.* STERLING FEDERAL SAVINGS AND LOAN ASSOCIATION *et al.*, Defendants-Appellees.

(No. 70-139;

Third District—June 10, 1971.

Kleiman, Cornfield & Feldman, of Chicago, for appellants.

Ward, Ward, Castendyck & Murray and Sterling, Gunner & Keller, both of Dixon, for appellees.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Atwood Hassell and Margaret Hassell, Plaintiff-Appellants, filed a multi-count action in the Circuit Court of Whiteside County against Sterling Federal Savings & Loan Association, Defendant-Appellee, Karl Over, and Bun Austin General Insurance Agency. In counts one and two of the complaint the only counts with which we are concerned on this appeal, the plaintiffs as mortgagors sought recovery of damages from defendant, Sterling Federal Savings & Loan Association, mortgagee, for the latter's failure to renew a fire insurance policy on the home of the mortgagors, the same having been totally destroyed by fire after expiration of a previously existing policy. The other counts of the complaint are still pending and have not been disposed of.

Each party moved for summary judgment. The trial court denied plaintiffs' motion for summary judgment and granted defendant's motion for summary judgment. On this appeal plaintiffs argue that their motion for summary judgment ought to have been granted by the trial court as a matter of law and both parties concede on this appeal that the facts are undisputed and that there is no question of any impropriety in the court disposing of the issues in the summary judgment procedure because of the existence of genuine issues of fact.

Plaintiff mortgagors were the owners of a home located in Rock Falls, Illinois. The defendant mortgagee an incorporated saving and loan association, granted a loan to the mortgagors on March 13, 1964, for which the mortgagors signed a promissory note secured by a mortgage on their home. In accord with the supplemental agreement the mortgagors were required to and did secure a policy of fire and extended coverage insurance, paid the first years premium thereon and delivered the original of the policy to the mortgagee, retaining a copy for themselves. The policy actually provided was what is known as a homeowner's policy including fire and extended coverage as well as other coverage. The policy also contained the usual provision protecting the interest of the mortgagee. The supplemental agreement provided that in addition to making the monthly payments on principal and interest the mortgagees were required to make monthly payments in proportion to an amount

sufficient to pay the annual charges for insurance and taxes when they came due.

Commencing in April, 1964, and continuing until May, 1967, mortgagors made regular monthly payments to the mortgagee. The payment included principal, interest and the estimated amount for taxes and insurance, the amount of the latter payment being increased in March, 1965. The policy of insurance taken out by the mortgagors and delivered to the mortgagee was a three year policy providing for annual payments. The mortgagors paid the first years premium in advance and in March of 1965 and March of 1966, the mortgagee made the second and third year payments from the funds which it had received from the mortgagors. Payment of the second and third annual premiums made by the mortgagee were made pursuant to bills or statements requesting payment but neither party was able to state whether such bills were received from the mortgagors or not. The policy of insurance expired according to its terms on March 12, 1967, and it was not renewed either by mortgagee or mortgagors. On April 14, 1967, the home of mortgagors (now uninsured) was totally destroyed by fire. From additional facts pertinent to the controversy, as set forth in the various documents supporting each parties motion for summary judgment, it appears that neither party received any notice from the insurance company or its agents or for that matter from one another indicating the expiration of the insurance policy. Likewise neither party received any bill or request for payment for any insurance applicable for the subsequent year. According to the affidavit of an officer of the mortgagee association the reminder system of the association failed to alert the association to the expiration of the insurance policy.

In the first count of their complaint based on contract and in the second based on tort, plaintiffs allege the defendant was under a duty to make the payments for insurance thereby renewing and keeping insurance in effect or were under a duty to advise plaintiffs that they would not make such payments. It is the theory of the plaintiffs in each count of the complaint that they had the right to rely on the fact that the mortgagee would carry out its duties and that it had negligently failed to carry out such duties to the damage of plaintiffs.

The mortgagee on the other hand argues that the rights and duties of the parties are established by the contract between them, that the contract imposes no such duty as asserted by plaintiffs, the only relation between the parties is that of mortgagor-mortgagee which relationship does not impose any such duty by virtue of the tort law, and finally that there are no facts shown establishing any other relationship or obligation from which the duty may be inferred.

Plaintiffs argue the trial court erred in dismissing their action because the mortgagee owed a duty to the mortgagors to pay the renewal premium with the funds the mortgagors had provided for that purpose. As heretofore noted plaintiffs' claim of duty and negligent breach thereof was set forth in one count based on contract and a second based on tort.

The relationship between the parties is based on the note, the mortgage and the supplemental agreement. Any negligence, *i.e.*, a potential breach of duty, must arise out of a positive duty which the law imposes because of the existence of the contractual relationship as mortgagor and mortgagee, or because of the negligent manner in which some act which the contract provides for is done, e.g., *Master v. Central Ill. Elec. Gas Co.*, 7 Ill.App.2d 348, 129 N.E.2d 586.

■■ According to Couch, Insurance, Sec. 25.84 (2d Ed. 1960) "In the absence of any agreement therefore, the mortgagee is under no obligation to insure buildings on the mortgaged premises * * *". None of the cases which have been called to our attention indicate any exceptions to the foregoing rule nor are they contrary to it. This is to say that there is no general duty imposed upon a mortgagee by virtue of his status as a mortgagee to insure the mortgaged premises.

Defendant mortgagor's duty or obligation if any depends on the provisions of the agreement between the parties. (Couch, Insurance, Sec. 25.85 (2d Ed. 1960).) The supplemental agreement entered into between the parties at the time the loan was made is the only agreement having any relation to the issue of insurance.

Paragraph A. of the supplemental agreement in so far as pertinent provides, "The Mortgagor Convenants: A (1) To pay said indebtedness and the interest thereon as herein and in said note provided, or according to any agreement extending the time of payment thereof; (2) To pay when due and before any penalty attaches thereto all taxes, special taxes, special assessments, water charges, and sewer service charges against said property * * * (3) To keep the improvements now or hereafter upon said premises against damage by fire, and such other hazards as the Mortgagee may require to be insured against; and to provide public liability insurance and such other insurance as the Mortgagee may require, until said indebtedness is fully paid, or in case of foreclosure, until expiration of the period of redemption, for the full insurable value thereof, in such companies, through such agents or brokers, and in such form as shall be satisfactory to the Mortgagee; such insurance policies shall remain with the Mortgagee during said period or periods, and contain the usual clause satisfactory to the Mortgagee making them payable to the Mortgagee * * *". Sub-paragraph B provides, "In order to provide for the payment of taxes, assessments, insurance

premiums, and other annual charges upon the property securing this indebtedness, I promise to pay monthly to the Mortgagee, in addition to the above payments, a sum estimated to be equivalent to one-twelfth of such items, which payments may, at the option of the Mortgagee, (a) be held by it and commingled with other such funds or its own funds for the payment of such items; (b) be carried in a share account and withdrawn by it to pay such items; or (c) be credited to the unpaid balance of said indebtedness as received, provided that the Mortgagee advances upon this obligation sums sufficient to pay said items as the same accrue and become payable. If the amount estimated to be sufficient to pay said items is not sufficient, I promise to pay the difference upon demand. If such sums are held or carried in a share account, the same are hereby pledged to further secure this indebtedness. The Mortgagee is authorized to pay said items as charged or billed without further inquiry."

Even though the plan of including in monthly payments estimated amounts of taxes and insurance in addition to principal and interest is commonly utilized in mortgage financing today, no cases have been called to our attention by either party directly involving the issue before us.

The principal case relied upon by plaintiffs is *Shapiro v. Amalgamated Trust & Savings Bank*, 283 Ill.App. 242, particularly the plaintiffs rely on the following quotation from the case, "If an agent neglects to procure insurance or does not follow instructions when obligated so to do, or if the policy obtained is void or materially defective through the agent's fault, or if the principal suffers damage by reason of any mistake or act of omission or commission of duty to his principal, he is liable to his principal for any loss he may have sustained thereby." Plaintiffs cite other cases as being in accord with the foregoing quotation as well as being in accord with the result reached in the Shapiro case finding the defendant had violated his duty regarding insurance. In considering the cases cited by plaintiffs including the *Shapiro* case, they all have a common denominator. In each case the liability of the defendant is predicated upon his duty as an agent to procure insurance. The agency may relate to the defendant's business of selling insurance or may be a special agency in that regard incident to some other circumstance.

*Shapiro v. Amalgamated, supra,* illustrates the second general line of cases namely those of a special agency to procure insurance. In *Shapiro* the plaintiff was a regular customer of defendant bank and with only the apparent motive of aiding its customers generally, an employee of the bank agreed to procure insurance on plaintiff's property. Not only did the employee procure a policy, receive a premium therefore, but in fact a policy was issued and delivered to plaintiff. However when a

loss occurred the insurance company denied liability because plaintiff was not the sole owner of the premises, a fact known to the bank's employee at the time the insurance was applied for by such employee. The only similarity between the *Shapiro* case and the case at bar is the fact that the defendant is a lending institution. The nature of the circumstances from which the court concluded that the bank was the agent for the purpose of procuring insurance are so substantially different that such differences themselves suggest the propriety of an opposite result in the case at bar. In *Schoenfield v. Fleisher,* 73 Ill. 404; *Gegare v. Fox River Land & Loan Co.,* 152 Wis. 548, 140 N.W. 305 and *Sheller v. Seattle Title Trust Co.,* 120 Wash. 140, 206 P. 847, the defendant was not regularly in the business of selling insurance but specially agreed to insure the property or procure insurance by way of a special under taking incident to some other relationship with plaintiff. Again the circumstances surrounding the creation of the duty are of no support to plaintiffs' position in this case. Other cases cited by plaintiff such as *Fries Breslin Co. v. Bergen,* 168 F. 360, affirmed 176 F. 76; *Diamond v. Duncan,* 107 Tex. 256, 172 S.W. 1100; *Criswell v. Riley,* 5 Ind.App. 503, 32 N.E. 814; *Johnson v. Otta,* 340 Ill.App. 270 and *Reed Mfg. Co. v. Wurtz,* 187 Ill.App. 378, involve defendants in the business of selling insurance and the agency relationship in such cases involve substantially different considerations from those in the instant case. In *Brant v. Gallup,* 111 Ill. 487; *Andryczka v. Towarzystwo,* 86 Ill.App. 229; *Tonini v. Thurman,* 192 Okl. 421, 136 P.2d 909 and *Union Savings Bank & Trust Co. v. Bedell,* 75 Vt. 108, 52 Atl. 270, cited by defendant, the court rejected claim of any duty on the mortgagee regarding insurance where it appeared that the mortgagee, as in the case at bar, was under a duty to keep the premises insured.

■■ In so far as the foregoing cases may have general application to the case at bar we believe that based thereon the supplemental agreement referred to above does not include any provisions from which it may be reasonably inferred that defendant undertook the duty of securing insurance for the premises or renewing the policy which expired. It was the duty of the plaintiffs to provide insurance and this duty is not transferred to mortgagee merely because the agreement contemplated that payment therefore by mortgagor may be made through the mortgagee. The duty to provide the insurance includes the duty to request the payment therefore by some appropriate means and no requirement is imposed upon the mortgagee to make payments for insurance absent a request therefore received from or in behalf of mortgagor. It is undisputed from the facts disclosed in the various documents considered by the court in support of the motions for summary judgment,

that no such request was made of mortgagee, consequently, we agree with the trial court that no duty was shown to exist which defendant could have violated. Conceivably the parties by a course of conduct or by custom and usage, could have established different duties but such questions are not presented by this record.

For the foregoing reasons the judgment of the Circuit Court of Whiteside County is affirmed.

Judgment affirmed.

ALLOY, P. J., and SCOTT, J., concur.