Era R. **WESSON,** Petitioner,

v.

**JEFFERSON SAVINGS & LOAN ASSOCIATION,** Respondent.

No. C–1242.

Supreme Court of Texas.

Nov. 10, 1982.

Rehearing Denied Dec. 15, 1982.

Mehaffy, Weber, Keith & Gonsoulin, Louis M. Scofield, Jr., Beaumont, for petitioner.

Gilbert T. Adams, Beaumont, for respondent.

SPEARS, Justice.

Era Wesson, individually and as executrix of her husband's estate, sued Jefferson Savings and Loan for an alleged breach of a duty to procure mortgage cancellation insurance. The trial court granted Mrs. Wesson's motion for summary judgment. The court of appeals reversed the judgment of the trial court and remanded the cause for a trial on the merits. Unpublished, Rule 452, Tex.R.Civ.Pro. We affirm the judgment of the court of appeals.

In February 1968, Mr. and Mrs. Doyle Wesson obtained a home loan from Jefferson Savings & Loan Association. The loan commitment letter specified that the loan was subject to "mortgage cancellation insurance required." The closing statement lists "Estimated Monthly Payments" which included "mortgage cancellation insurance —$19.95." Neither party, however, procured the mortgage cancellation insurance.

The Wessons paid $206.00 a month for the first two years of the loan. This payment included $57.57 which was placed in an escrow account to cover taxes and the yearly premium payments for hazard and mortgage cancellation insurance. Since the insurance was never procured, after the first two years of payments there was an excess of approximately $450.00 in the escrow account. In May 1970, the escrow payment was decreased by $10.00 and the excess was applied to the principal debt. In April 1971, the monthly escrow payment was reduced by $9.00.

The Wessons were sent an annual statement showing how the escrow funds were disbursed. The yearly statements listed the amounts paid into the escrow account and the amounts disbursed. The disbursements were coded as either "Tax Disbursements," "Insurance Disbursements," or "Miscellaneous Disbursements." The Wessons were never informed that, contrary to their belief, they did not have mortgage cancellation insurance.

When Mr. Wesson died, Jefferson Savings & Loan informed Mrs. Wesson she did not have mortgage cancellation insurance. She filed suit against Jefferson Savings & Loan for their failure to procure the insurance. Both parties filed motions for summary judgment. The trial court granted Mrs. Wesson's motion and ordered that the balance due on her loan be discharged. The court of appeals reversed and remanded, holding there was a material fact issue of whether Jefferson Savings & Loan could have obtained the insurance without at least the assistance of the Wessons.

In order to uphold a summary judgment, the moving party must establish that

as a matter of law there are no genuine issues of fact. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979); *Wilcox v. St. Mary's University of San Antonio,* 531 S.W.2d 589, 591 (Tex. 1975).

In the absence of an agreement, the mortgagee is under no obligation to insure the mortgaged property. 3 Couch, Cyclopedia of Insurance Law § 25.84 (2nd Ed. 1960); *Colonial Savings & Loan v. Taylor,* 533 S.W.2d 61, 64 (Tex.Civ.App.—Houston [1st Dist.] 1975, *rev'd on other grounds* 544 S.W.2d 116 (Tex.1976). A creditor cannot be held liable for failure to procure an insurance policy unless it agreed to assume the duty of acquiring the insurance.[1] *See Colonial Savings Ass'n v. Taylor,* 544 S.W.2d 116, 120 (Tex.1976); *Parsons v. Watley,* 492 S.W.2d 61, 64 (Tex.Civ.App.—Eastland 1973, no writ); *Wynnewood State Bank v. Brigham,* 434 S.W.2d 874, 878 (Tex. Civ.App.—Texarkana 1968, writ ref'd n.r. e.); *Robert & St. John Motor Co. v. Bains,* 57 S.W.2d 872, 872 (Tex.Civ.App.—Eastland 1933, no writ). This could be accomplished through an agreement between the parties or by an obligation imposed upon the creditor in the mortgage agreement itself. For example, in *Jack Criswell Lincoln Mercury, Inc. v. Tsichlis,* 549 S.W.2d 255, 259 (Tex. Civ.App.—Beaumont 1977, no writ) the debtor was held entitled to recover from a car dealer for the loss of his vehicle since the dealer had orally represented to the debtor that property insurance would be procured. Additionally, in *G.F.C. v. Williams,* 231 S.W.2d 565, 568 (Tex.Civ.App.— Dallas 1950, no writ) the court found that by including a sum for premiums within the amount of the note, the lender bank contracted to procure the insurance.

Even though the mortgage commitment letter specifically provided "mortgage cancellation insurance required," this provision does not expressly state which party was to procure the required insurance, and could be interpreted to place the burden on either party. The contract term is ambiguous, and extrinsic evidence may be introduced to show an agreement between the parties. *See Roy L. Jones, Inc. v. Home Transp. Co.,* 422 F.2d 179, 181 (5th Cir. 1970); *Trinity Universal Insurance Co. v. Ponsford Bros.,* 423 S.W.2d 571, 574 (Tex. 1968); *Amistad, Inc. v. Frates Communities, Inc.,* 611 S.W.2d 121, 127 (Tex.Civ.App. —Waco 1981, writ ref'd n.r.e.).

The petitioner, Mrs. Wesson, argues Jefferson Savings & Loan owed a legal duty to procure mortgage cancellation insurance or to inform the Wessons that none was procured. She contends a fiduciary duty arose out of a depositor/depository relationship between the parties through Jefferson's control of an "escrow" account into which premiums were paid monthly.[2]

Mrs. Wesson relies primarily on the case of *City of Fort Worth v. Pippen,* 439 S.W.2d 660 (Tex.1969). In *Pippen,* the City of Fort Worth deposited funds with a title company

---

1. An analogous situation deals with an agreement between an insurance agent and a property owner. *See Burroughs v. Bunch,* 210 S.W.2d 211 (Tex.Civ.App.—El Paso 1948, writ ref'd).

   An insurance broker *agreeing* to obtain insurance owes the legal duty to obtain same, and if he cannot do so, to notify his principal of his failure. (emphasis added) *Id.* at 214; *see also Scott v. Conner,* 403 S.W.2d 453, 457 (Tex.Civ.App.—Beaumont 1966, no writ).

2. There is no Texas case on point; however, other jurisdictions have held the payment of funds by the mortgagor into an "escrow" account, to be used by the mortgagee to meet tax and insurance obligations upon the property as they accrue, does not create a trust or fiduciary relationship. The escrow relationship does not in itself impose a duty to acquire insurance in the absence of an agreement to do so. *E.g., Umdenstock v. American Mortgage & Invest. Co.,* 363 F.Supp. 1375, 1377 (D.Okl.); *Honaker v. Farmers Mutual Insurance Co.,* 313 A.2d 900, 902 (Del.1973); *Hassell v. Sterling Federal Savings & Loan Ass'n,* 132 Ill.App.2d 1005, 271 N.E.2d 7, 11 (1971); *Rayborn v. Fort Thomas Building & Loan Ass'n,* 453 S.W.2d 558, 560 (Ky.1970); *Boyce v. National Commercial Bank & Trust Co.,* 41 Misc.2d 1071, 247 N.Y.S.2d 521, 527, *aff'd* 22 A.D.2d 848, 254 N.Y.S.2d 127 (1964).

to be used to acquire certain properties. The vice-president of the title company and a city employee handled the transactions in a manner that enabled them to receive personally part of the purchase price. The title company was held liable for the breach of its fiduciary duty to the city. This court found the title company owed the city a duty of loyalty, a duty to make full disclosure, and a duty to exercise a high degree of care.

The *Pippen* case can be distinguished from the case before us. The court found there was no escrow agreement or escrow account involved, but rather based its decision on the theory that an agent owes a fiduciary duty to its principal. Additionally, the *Pippen* case involved fraud and embezzlement in the handling of the city's funds. No such fact situation exists in the instant case.

Additionally, Mrs. Wesson relies on language in *Watkins v. Valley Fidelity Bank & Trust*, 63 Tenn.App. 493, 474 S.W.2d 915, 918 (1971):

> When a bank makes a charge against a borrower for credit life insurance premiums, includes that amount in the loan and retains the money so charged, we hold the bank not only assumed the contractual obligation to properly apply the amount to credit life insurance, but also stands in a fiduciary capacity toward the borrower to see that the amount so charged and withheld is actually applied to the purchase of such insurance.

*Id.* at 918.

*Watkins* is also distinguishable. There the loan itself included a charge for credit life insurance in the amount financed, and the amount withheld was figured into the finance charge. The Tennessee court found this resulted in a contract requiring the creditor to procure the insurance, and the consideration was the finance charge flow-

---

**3.** In a trial on the merits the burden of proof is on Mrs. Wesson to show Jefferson Savings and Loan assumed the duty to acquire the insurance. *Colonial Savings & Loan v. Taylor*, 544

ing to the bank. The fiduciary duty arose as a result of the bank's agreement to procure the insurance, not solely from the retention of money for premiums.

In the case before us the mortgage contract does not expressly place a duty on Jefferson Savings & Loan to acquire the insurance. A fact question, however, is presented as to which party agreed to procure the mortgage cancellation insurance on the Wessons' property. Mrs. Wesson has not shown as a matter of law that Jefferson Savings & Loan assumed the burden of acquiring the insurance.[3] The trial court, therefore, erred in granting summary judgment for Mrs. Wesson.

We do not agree with the court of appeals that the ultimate fact issue to be determined is whether or not Jefferson Savings & Loan could have obtained the insurance. Rather, the seminal issue is who had the duty to procure the mortgage cancellation insurance.

The judgment of the court of appeals is affirmed and the cause is remanded to the trial court.

---

S.W.2d 116, 120 (Tex.1976); *Robert & St. John Motor Co. v. Bains*, 57 S.W.2d 872, 872 (Tex. Civ.App.—Eastland 1933, no writ).