716 P.2d 1042

**HOME FEDERAL SAVINGS AND LOAN ASSOCIATION, a corporation, Plaintiff/Counterdefendant/Appellee,**

v.

**DOOLEY'S OF TUCSON, INC., an Arizona corporation, Defendant/Counterclaimant/Appellant,**

**DOOLEY'S OF TUCSON, INC., an Arizona corporation, Crossclaimant/Appellant,**

v.

**UNITED STATES FIRE INSURANCE COMPANY, a New York corporation, Crossdefendant/Appellee.**

No. 2 CA–CIV 5438.

Court of Appeals of Arizona, Division 2, Department A.

Dec. 19, 1985.

Review Denied April 1, 1986.

Molloy, Jones, Donahue, Trachta, Childers & Mallamo, P.C. by Ardner R. Cheshire, Jr., Tucson, for plaintiff/counterdefendant/appellee Home Federal Sav.

Horne, Silver, Kaplan & Bistrow, P.C. by Michael S. Dulberg, Phoenix, for defendant/counterclaimant/crossclaimant/appellant Dooley's of Tucson, Inc.

Jennings, Strouss & Salmon by T. Patrick Flood, Phoenix, for crossdefendant/appellee U.S. Fire Ins. Co.

## OPINION

FERNANDEZ, Judge.

This is a mortgage foreclosure action in which Home Federal Savings and Loan Association (Home Federal), the mortgagee, sought foreclosure against the mortgagor, Dooley's of Tucson, Inc. (Dooley's), and damages from United States Fire Insurance Company for failure to pay amounts due under a fire insurance policy. Dooley's counterclaimed, alleging that Home Federal was liable to it for breach of its obligation to pay insurance premiums from its impound account, and crossclaimed against United States Fire for its failure to pay benefits pursuant to the insurance policy. The trial court granted summary judgment, ruling that Home Federal was not liable on Dooley's counterclaim and dismissing the crossclaim against United States Fire as time-barred. Both orders included finality language pursuant to Rule 54(b), Rules of Civil Procedure, 16 A.R.S., and Dooley's has appealed from both.

The applicable facts are not disputed. Dooley's is a corporation which owned and operated a restaurant/bar near the University of Arizona in Tucson. On December 28, 1977, Dooley's borrowed $370,000 from Home Federal to construct the bar. The loan was evidenced by a promissory note secured by a mortgage on the real property and by a security agreement on the personal property. The mortgage included terms which set up an impound account with Home Federal by which, as part of its monthly payment, Dooley's would pay $\frac{1}{12}$th of the annual amounts due for taxes, assessments, mortgage insurance premiums, and fire or other hazard insurance premiums. The monies "shall be held in trust by Mortgagee to pay said premiums," according to the terms of the mortgage. Dooley's purchased the fire insurance policy on the property from United States Fire, the face amount of which was $750,000.

At the time the mortgage contract was entered into, all Dooley's stock was owned by the Reno Group, which also owned bars in other cities. In December 1982, the Reno Group sold all the stock in Dooley's of Tucson, Inc. to Richard Reischel. The record shows that Home Federal was unaware of the transfer. In January 1983 the Reno Group also sold a bar in Tempe, Arizona, and advised C.D. Harris and Company, the agent selling the insurance and managing the Reno Group's insurance account, to delete Tempe coverage. United States Fire was erroneously advised to delete the Tucson property from coverage as well. United States Fire sent no notice of the deletion to either the insured or the mortgagee, nor did it send a bill to Home Federal in April 1983 when the premium was due. Home Federal, meanwhile, continued impounding an amount monthly to pay the fire insurance premium, but no payment was tendered prior to the fire in July 1983 which virtually destroyed the property.

### Counterclaim Against Home Federal

Dooley's makes a three-point attack against the granting of Home Federal's motion for summary judgment:

1) Home Federal had an express contractual obligation under the mortgage to ap-

ply impounds to the payment of insurance premiums;

2) Home Federal breached a fiduciary duty by failing to determine the date the insurance premium was due and to apply the impounded funds to their intended purpose regardless of the fact that no bill was received, and

3) Dooley's was induced to rely on Home Federal's previous course of conduct and express acts that it would continue to make insurance premium payments when due.

■ The first point is unsupported by the language of the mortgage and by applicable case law. An uncontroverted affidavit by Mr. Haggard, a loan service officer for Home Federal, states that Home Federal, like other lending institutions, would wait for a demand to be made to pay insurance premiums, taxes and assessments before payment would be tendered. The mortgage does contain language which mandates that the impound account be held in trust by Home Federal to pay the premiums. However, the mortgage also states:

> "Mortgagor agrees to keep the mortgaged property insured as may be required from time to time by Mortgagee against loss by fire or other hazards, in such amounts and for such purposes as may be required by Mortgagee, and will pay promptly when due any premiums on such insurance."

Two cases which are helpful are *Boyce v. National Commercial Bank and Trust Company of Albany*, 41 Misc.2d 1071, 247 N.Y.S.2d 521 (Sup.Ct.), aff'd on other grounds, 22 A.D.2d 848, 254 N.Y.S.2d 127 (1964), and *Hassell v. Sterling Federal Savings and Loan Association*, 132 Ill. App.2d 1005, 271 N.E.2d 7 (1971). In *Boyce* the mortgagor sued both the insurance company and the mortgagee when his house burned and it was discovered the insurance policy had been cancelled. The claim against the bank was based upon an allegation that it had negligently failed to pay an annual fire insurance premium from an escrow account. The court stated:

> "The plaintiffs claim that the bank was a trustee for their benefit and that it failed in its fiduciary duty to pay the insurance premium and by its negligence and failure to perform its duty, the fire insurance policy was cancelled to plaintiffs' detriment and loss.

> "The bank admits that on January 29, 1961, the annual due date for the payment of the fire insurance premium, that there were sufficient funds in its possession credited to plaintiffs' escrow account to pay the premium.

> "The primary obligation to pay the annual fire insurance premiums on the policy involved here was the obligation of the plaintiffs. The monthly payments made to the bank to be held in escrow to be used for the payment of taxes and fire insurance premiums did not constitute a delegation of the duty to the bank to make such payments. The provision in the mortgage requiring monthly escrow payments was intended to guarantee the existence of a fund from which real property taxes and fire insurance premiums could be paid when they became due. The defendant bank had no title to the real property involved as trustee and was not, therefore, duty bound to protect the property against loss by fire or otherwise. The only obligation of the bank under the terms of the mortgage agreement was to hold the monies collected in trust for use in making payment of taxes and fire insurance premiums and for no other purpose. If a demand was made by the plaintiffs or the fire insurance company for payment of a fire insurance premium that had become due and the bank refused or failed to make such payment, its liability for subsequent losses would then accrue. Until such demand was made for payment of the fire insurance premium and the bank refused or failed to pay no liability for any loss by reason of the failure to pay such fire insurance premium existed against the bank." 41 Misc.2d at 1077, 247 N.Y.S.2d at 527–528.

In *Hassell*, the mortgagor sued the mortgagee for its alleged failure to renew a fire policy on the plaintiff's home which burned

after the policy lapsed. The mortgage required the mortgagor to obtain a fire insurance policy. The mortgagee impounded monies on a monthly basis to pay insurance premiums. It paid the annual premiums when a bill was received, but no demand had been made the year the house burned. The mortgagor argued that the mortgagee had a duty to make the payment and to keep the insurance in effect because of the impound account and because the mortgagee allegedly had a system to alert it when the policy expired. The court rejected the claim that the mortgagor had a right to rely on the mortgagee carrying out its duty, stating:

"It was the duty of the plaintiffs [mortgagors] to provide insurance and this duty is not transferred to mortgagee merely because the agreement contemplated that payment therefore [sic] by mortgagor may be made through the mortgagee. The duty to provide the insurance includes the duty to request the payment therefor by some appropriate means and no requirement is imposed upon the mortgagee to make payments for insurance absent a request therefor received from or in behalf of mortgagor." 132 Ill.App.2d at 1010, 271 N.E.2d at 11.

We do not believe the mortgage agreement here placed the burden on the mortgagee to pay the premiums. Home Federal would have breached its obligation only if it had refused to pay the impounded funds once a bill had been presented.

■ Dooley's contends that a fiduciary relationship existed between it and Home Federal by virtue of the impound account which held funds "in trust" for the benefit of the mortgagor. It claims Home Federal thus had a duty under the mortgage to search its records to determine that a payment was due and to offer it without the presentation of a bill. The relationship between the parties based on the contract, however, was creditor and debtor, not trustee and beneficiary. See *Brooks v. Valley National Bank*, 113 Ariz. 169, 548 P.2d 1166 (1976). We find no dispute as to any material fact which would show that

Home Federal breached its obligation either under the express conditions of the contract or under any obligation it assumed by virtue of the relationship between the parties.

■ Dooley's last theory, that Home Federal's prior course of conduct induced Dooley's to rely on Home Federal for payment of the annual premium, also fails. Since December 1977 the parties had followed a course of conduct under which Dooley's paid the sums to Home Federal to cover the insurance premiums as part of its mortgage payment, and Home Federal forwarded the sums to the insurance company when premiums were due and a bill was received. It is also true that at the time of the fire, Dooley's was current in its payments to Home Federal to cover the premiums and that Home Federal did have an amount sufficient to pay the premium. Additionally, Dooley's points out that the Reno Group had received an impound account status report in December 1982 in which Home Federal stated that it had impounded funds sufficient to pay the insurance premium and that the premium due date was April 1983.

The record before the trial court, however, belied the possibility of reliance. Dooley's was sold by the Reno Group to Reischel in December 1982, but the Reno Group, as personal guarantors of the note assumed by Reischel, retained a stake in the operations of the bar. An affidavit of Donald Reno states that he was president of Dooley's of Tucson, Inc. at all times pertinent to the events in question and that "[f]rom 1977 through July 1983, *we* were current in our payments" (emphasis added). Additionally, he stated that if he had not believed that Home Federal would make the .insurance payment in April 1983, "I would have made the insurance premium payment myself." The fact that the Reno Group was still involved is fatal to Dooley's position when we review several pieces of correspondence from Harris and Company, the insurance agent, to members of the Reno Group, clearly informing the group

that no coverage was in effect after December 1982 on the Dooley's of Tucson location. A letter from Reno dated February 1, 1983, to Harris and Company, states, "This completes the liquidation of all of our business interests in Arizona." Dooley's was in no position to rightfully rely on Home Federal to make an insurance payment when the responsibility for the deletion of coverage can be traced back to Dooley's. We do not believe the trial court erred in granting Home Federal's motion for summary judgment.

*Crossclaim Against United States Fire*

■ The second part of Dooley's appeal is from the dismissal of its crossclaim against United States Fire. As we have discussed, fire insurance for the Tucson bar was deleted by direction of the Reno Group effective December 31, 1982, and coverage was formally denied by United States Fire on November 18, 1983. Dooley's filed an answer and crossclaim on July 25, 1984, more than one year after the date of the fire. United States Fire filed a motion to dismiss on the basis that the one-year statute of limitations in A.R.S. § 20–1115 expired prior to the filing of the crossclaim.

Dooley's relies on *Zuckerman v. Transamerica Insurance Co.*, 133 Ariz. 139, 650 P.2d 441 (1982). In *Zuckerman*, the insured suffered a fire loss and subsequently reached a settlement agreement with the insurance company. Later, the insurance company backed out of the agreement, and the insured delayed until approximately three months after the expiration of the one-year policy limitation before suing the insurance company. Our supreme court stated that the insurance company would be estopped to enforce the contractual one-year statute of limitation unless it could show prejudice because the suit was brought more than one year after the loss. This case is not like *Zuckerman*. From the first United States Fire took the position that there was no coverage for the July 1983 fire. It formally denied coverage in November 1983, and Dooley's did noth-

ing further until July 1984 when it raised the issue only after Home Federal instituted suit to foreclose on its mortgage. In *Zuckerman* the insurance company never denied that it was required to pay on the claim; the only dispute was as to the amount it would pay. Because the dispute here was as to the existence of coverage and because Dooley's took no action after the claim was denied until it was forced to in response to Home Federal's suit, we find the trial court was correct in granting summary judgment on Dooley's crossclaim against United States Fire.

■ Dooley's other contention, that the one-year statute of limitations, even if applicable, should not bar its bad faith claim since this is not an action "on the policy," is also of no moment. The cancellation of the insurance giving rise to the bad faith claim was caused by Dooley's representation to its agent that coverage was no longer required at its Tucson location. Dooley's only claim against United States Fire, even if phrased in terms of "bad faith," can only be based on the policy and is thus barred by the statute of limitations.

Appellees Home Federal and United States Fire will be awarded attorney fees on appeal upon filing a statement of costs pursuant to Rule 21(c), Rules of Civil Appellate Procedure, 17A A.R.S. (1984 Supp.), and *Schweiger v. China Doll Restaurant, Inc.*, 138 Ariz. 183, 673 P.2d 927 (App. 1983).

BIRDSALL, P.J., and HOWARD, J., concur.