Ellis J. Staley, Jr., J.
The above actions were tried at an Equity Term of the Supreme Court by the court. The plaintiffs in their action against the defendant Nationwide Mutual Fire Insurance Company are seeking to recover damages pursuant to a contract of insurance insuring premises located on the Schenectady-Altamont Hoad in the Town of Guilderland, Albany County, New York, against loss by fire of the dwelling, its contents and for additional living expenses.
The plaintiffs purchased their home on the 29th day of January, 1959 at which time they executed an F. H. A. mortgage with the National Commercial Bank and Trust Company in the sum of $11,300. On the same day the defendant, Nationwide Mutual Fire Insurance Company, issued a three-year homeowners’ policy providing for fire insurance coverage of the dwelling in the .sum of $12,000 and for personal property contents in the sum of $4,800 and for any additional living expenses incurred by reason of a fire in the dwelling in the sum of $1,200.
The original annual premium in the sum of $56.10 was paid by the insureds and the annual premium due on January 29,1960 was paid by the insureds, but it is claimed by the defendant Nationwide that the annual premium that became due on January 29,1961 was neither paid by the insureds nor the mortgagee; and that a notice of cancellation was duly mailed to the insureds on February 6,1961; and that a letter of cancellation was mailed to the defendant bank as mortgagee on March 1, 1961; and that by reason thereof the policy was legally and validly cancelled prior to the date of July 2,1961 when the dwelling owned by the plaintiffs was damaged by fire resulting in the alleged loss to the plaintiffs for damage to their dwelling in the total sum of $11,125.60, for damage to the contents of the dwelling in the sum of $4,800 and damages incurred for additional living expenses in the sum of $1,200 making a total claim for damages in the sum of $17,125.60.
In the plaintiffs’ cause of action against the defendant bank the plaintiffs seek to recover the damages incurred by reason of the fire on the ground that the defendant bank negligently failed *1073 to pay to the defendant Nationwide the annual premium on the said fire insurance policy which became due on January 29, 1961 pursuant to an agreement by the plaintiffs and the defendant bank contained in the F. H. A. mortgage wherein the defendant bank collected monthly installments to be held in escrow for the express purpose of paying the annual fire insurance premiums when they became due. The defendant bank has commenced a third-party action against the defendant Nationwide for indemnity and reimbursement for any judgment that might be recovered by the plaintiffs against the defendant bank.
The primary issue in the first cause of action is whether or not the defendant Nationwide legally and validly cancelled the said fire insurance policy as to the insureds’ interest and as to the interest of the mortgagee prior to the occurrence of the fire on July 2, 1961. The terms of the policy providing for cancellation of the policy were identical with the provisions of section 168 of the Insurance Law and are stated as follows:
“ This policy may be cancelled at any time by this Company by giving to the insured a five days’ written notice of cancellation with or without tender of the excess of paid premium above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand.
“ If loss hereunder is made payable, in whole or in part, to a designated mortgagee not named herein as the insured, such interest in this policy may be cancelled by giving to such mortgagee a ten days’ written notice of cancellation.”
Although it is immaterial here the period of 5 days’ written notice to the insured was extended to 10 days by indorsement on the policy.
The defendant Nationwide claims that on February 6, 1961 when the annual premium on the fire insurance policy was past due that a notice of cancellation was mailed to the plaintiffs and to the agent, James W. Shaughnessy, who wrote the original policy which notice of cancellation the plaintiffs deny was ever received and the copy of which notice of cancellation the agent’s testimony was contradictory as to whether or not he could recall receipt of any such notice of cancellation.
The first question to be determined, therefore, is whether or not the mailing of a notice of cancellation by the defendant Nationwide by ordinary mail addressed to the plaintiffs was sufficient compliance with the terms of the policy to effect an absolute cancellation thereof after 10 days from the date of mailing. The policy provides that the policy may be cancelled at any *1074 time by the company by giving to the insured a 5 (10) days’ written notice of cancellation.
In the cases dealing with interpretation of a provision that requires that a notice should be “ given ”, it has been held that the requirement is not fulfilled until the party entitled to notice has received the required notice. (Ann., 64 ALR 2d 982-1024.)
In the case of Sasmor v. Vivaudou, Inc. (200 Misc. 1020, 1023-1024) the court construed a provision requiring that notice be given by either party to the other in writing for cancellation of an agreement and stated as follows: “ The plaintiff argues that notice is ‘ given ’ when it is ‘ received ’, not when it is ‘ mailed ’, and that, since the contract requires that notice be ‘ given by either party to the other in writing on or before October 1,1948, ’ proof of mailing on September 29,1948, is insufficient, in the face of his denial of receipt. * * * In the situation at bar, the issue is not the making of the contract but rather its meaning after it has already been made. A contract, once entered into, may provide that notices therein specified are effective if mailed, or that they must be received and not merely sent (Vassar v. Camp, 11 N. Y. 441). While there is no clear specific provision in that regard spelled out in the present contract, I am inclined to construe the requirement of ‘ given ’ to mean ‘ delivered ’ (Peabody v. Satterlee, 166 N. Y. 174).”
In the case of Louisiana Public Utilities Co. v. Atlas Assur. Co. (238 App. Div. 474, affd. 263 N. Y. 595) the insured sent a letter to the insurance company requesting cancellation of insurance coverage which letter was mailed on October 1, 1928 and received by the insurance company on October 3,1928, two days after the fire loss occurred. The court stated in holding that the insurance was in effect even though the letter of cancellation might have been mailed prior to the occasion of the fire loss stated (p. 477) as follows: “ The law is quite clear that a cancellation of insurance is not effective, irrespective of the intention of the insured, until notice thereof is actually received by the insurer or by his agent authorized to receive and accept such notice. ’ ’
In the case of Rose Inn Corp. v. National Union Fire Ins. Co. (133 Misc. 440) the insurance company attempted to transmit a notice of cancellation of a fire insurance policy by registered mail to the insured, but the notice was not delivered and was returned to the agency. Thereafter a fire occurred and it was held that the insured was entitled to recover on the fire insurance policy and that it had not been validly cancelled. The policy involved in the Bose case had a similar provision for cancellation as the one involved in the instant action. In the interpretation of *1075 that clause the court stated as follows at page 444: “ The method of cancellation prescribed in the policy must be strictly followed. The insured must have actual notice of cancellation, or such a situation must be brought about as to put him on inquiry which, if made, would result in actual notice. A mere entry on the company’s books, or a mere instruction to its agent to cancel does not operate as a cancellation. There was no compliance by the old companies with the provision of the policy requiring five days’ notice of cancellation to be given and until the giving of such a notice these policies were not by their terms cancelable by these defendants. (Yoshimi v. Fidelity Fire Ins. Co., 99 App. Div. 69; Partridge v. Milwaukee Mechanics’ Ins. Co., 13 id. 519; Stone v. Franklin Fire Ins. Co., 105 N. Y. 543; Hermann v. Niagara Fire Ins. Co., 100 id. 411; Ikeller v. Hartford Fire Ins. Co., 24 Misc. 136.) The attempted service of the written notice of cancellation by registered mail did not effect such cancellation. (Kamille v. Home Fire & Marine Ins. Co. of California, 129 Misc. 536.) ”
In view of the foregoing interpretations of the plaintiffs’ policy provision for cancellation it was incumbent upon the defendant Nationwide to establish by sufficient proof that notice of cancellation had in effect been “ given ” to the plaintiffs.
There is a presumption in the law that a letter properly addressed, stamped and mailed is duly delivered to the addressee. (Trusts & Guar. Co. v. Barnhardt, 270 N. Y. 350; Sasmor v. Vivaudou, Inc., 200 Misc. 1020, supra; New York Cent. Employees Credit Union v. Commercial Credit Co., 13 Misc 2d 874.)
The second question presented is whether or not the defendant Nationwide has presented credible evidence to establish actual mailing of the notice of cancellation to the plaintiffs and thereby establish the presumption of delivery.
The defendant Nationwide presented testimony as to the interoffice procedure for processing notices of cancellation. When an insurance premium was not paid on its due date, the defendant Nationwide, after a period of seven days, mailed a notice of cancellation to the insured and to the agent who originated the insurance. The cancellation notices were transferred from the carbon receipt section to the mail department on the seventh day after the due date. The clerk in the carbon receipt section did no actual mailing. The typist in the mail department made a list of the names of the cancellation notices on a certificate mail sheet, put the notices in envelopes, wrapped the certificate mail sheet around the envelopes and sent the package to the mail department. The transferred envelopes went to the mail department for sealing and stamping by the mail department.
*1076 The defendant Nationwide did not produce any witness from the mail department to testify concerning the sealed and stamped envelopes containing the cancelled notices. A mail messenger picked up the package from the mail department and delivered the package to the post office. He did not check the addresses on the certificate mail sheet with the addresses in the respective mail envelopes. The post-office Superintendent received the package containing the certificate mail sheet and the envelopes, counted the number of envelopes and compared them with the number of names on the certificate mail sheet, and, if they proved to be the same number, stamped the certificate mail sheet and returned it to the mail messenger. The post-office Superintendent did not check the addresses on the certificate mail sheet with the addresses contained in the envelopes presented. Thirty days after the due date the underwriting department sent a letter of cancellation to the mortgagee set forth in the policy of insurance. The typist in the underwriting section typed the letter of cancellation to the bank and made a list of cancellation letters on a certificate mail list. The list of the envelopes would then be sent to the mail department for sealing, stamping and mailing. A copy of the letter of cancellation was also sent to the agent who originated the insurance. The typist preparing the letter of cancellation did not do any mailing.
The defendant Nationwide contends that on February 6, 1961 a notice of cancellation was mailed to the plaintiffs, a copy of the notice of cancellation was mailed to the agent, and that on March 1,1961 a letter of cancellation was mailed to the defendant bank, a copy of which was also mailed to the agent. The plaintiffs deny receipt of any notice of cancellation, the defendant bank denies receipt of any letter of cancellation, the agent did not recall receiving any notice of cancellation from the defendant Nationwide in this case. Although he testified that he did receive a cancellation strip prior to July 2,1961 he had no record of such cancellation strip in his possession or file, and had no record or possession of a copy of the letter of cancellation to the mortgagee in his possession or in his file.
It is incredible to believe that if the procedure outlined by the defendant Nationwide had been fully carried out in this case, that delivery would not have been effected to the knowledge of some of the persons involved.
It is my opinion that the defendant Nationwide has not established as a matter of law that notice of cancellation of the fire insurance policy involved was given to the plaintiffs or the defendant bank and that the evidence presented does not suffi *1077 ciently establish delivery of notice of cancellation to either the plaintiffs or the defendant bank. (Hastings v. Brooklyn Life Ins. Co., 138 N. Y. 473; A. & L. Trading Co. v. Herald Sq. Bakers, 40 Misc 2d 72.)
The fire insurance policy involved herein was not cancelled either as to the plaintiffs or the defendant bank and remained in force on July 2, 1961 and the plaintiffs are entitled to recover damages according to the terms of the policy.
In the plaintiffs’ cause of action against the defendant bank they seek to establish liability on the part of the bank for the fire losses by reason of its failure to pay from the plaintiffs’ escrow funds in its possession the annual fire insurance premium that became due on January 29, 1961. The plaintiffs claim that the bank was a trustee for their benefit and that it failed in its fiduciary duty to pay the insurance premium and by its negligence and failure to perform its duty, the fire insurance policy was cancelled to plaintiffs’ detriment and loss.
The bank admits that on January 291,1961, the annual due date for the payment of the fire insurance premium, that there were sufficient funds in its possession credited to plaintiffs’ escrow account to pay the premium.
The primary obligation to pay the annual fire insurance premiums on the policy involved here was the obligation of the plaintiffs. The monthly payments made to the bank to be held in escrow to be used for the payment of taxes and fire insurance premiums did not constitute a delegation of the duty to the bank to make such payments. The provision in the mortgage requiring monthly escrow payments was intended to guarantee the existence of a fund from which real property taxes and fire insurance premiums could be paid when they became due. The defendant bank had no title to the real property involved as trustee and was not, therefore, duty bound to protect the property against loss by fire or otherwise. The only obligation of the bank under the terms of the mortgage agreement was to hold the moneys collected in trust for use in making payment of taxes and fire insurance premiums and for no other purpose. If a demand was made by the plaintiffs or the fire insurance company for payment of a fire insurance premium that had become due and the bank refused or failed to make such payment, its liability for subsequent losses would then accrue. Until such demand was made for payment of the fire insurance premium and the bank refused or failed to pay no laibility for any loss by reason of the failure to pay such fire insurance premium existed against the bank.
*1078 The complaint against the defendant bank and the bank’s third-party complaint against the defendant Nationwide are, therefore, dismissed.
The plaintiffs are entitled to judgment against the defendant Nationwide in the sum of $9,266 for fire damage to their dwelling; in the sum of $829 for fire damage to the sump pump, well pump, furnace and hot-water heater; in the sum of $104 for expenses incurred in making temporary repairs; in the sum of $4,800 for fire damage to personal property contents in the dwelling; in the sum of $1,200 for the additional living expenses incurred. All other items of damage claimed are disallowed. Judgment in the sum of $16,199, with interest from the date of 60 days after proof of loss was received by the insurance company is hereby granted to the plaintiffs against the defendant Nationwide Mutual Fire Insurance Company. (Delcomyn v. Westchester Fire Ins. Co., 284 App. Div. 1055.)