27 N.Y.2d 449 (1971)
Sy Jack Realty Co., Appellant,
v.
Pergament Syosset Corp., Respondent.
Court of Appeals of the State of New York.
Argued November 9, 1970.
Decided January 21, 1971.
Ira P. Block and Dennis H. Kops for appellant.
Gerald P. Halpern for respondent.
Judges BURKE, SCILEPPI, BERGAN and GIBSON concur with Chief Judge FULD; Judge JASEN dissents and votes to reverse in a separate opinion in which Judge BREITEL concurs.
*451 Chief Judge FULD.
The controversy having been submitted pursuant to CPLR 3222, the facts are not in dispute. The defendant Pergament Syosset Corp., a retailer, has occupied the store in which it conducts its business for more than 15 years. The premises had been rented from the plaintiff under a lease which expired in June of 1969. The defendant had an option to renew for five additional years provided that notice of exercise of that option "be given" to the plaintiff landlord "in writing on or before March 31, 1969". Accordingly, intent on renewing the lease, the defendant, on March 28, mailed a letter to the plaintiff in which it made known its desire. The letter, however, was never delivered. Significantly, though, the plaintiff took no action whatsoever until May 5. On that day, it dispatched a letter to the defendant requesting permission to put up or post signs indicating that the store was "For Rent". On the very next day (May 6)  still about two months before the expiration of the lease  the defendant advised the plaintiff, also by mail, that it had previously sent a letter exercising its option and enclosed a copy of its March 28 communication. *452 The plaintiff replied, stating that the renewal was rejected as untimely.
We agree with the plaintiff that notice, when required to be "given" by a certain date, is insufficient and ineffectual if not received within the time specified. (See, e.g., Peabody v. Satterlee, 166 N.Y. 174; Kantrowitz v. Dairymen's League Co-op. Assn., 272 App. Div. 470, affd. 297 N.Y. 991; Boyce v. National Commercial Bank & Trust Co., 41 Misc 2d 1071, affd. 22 A D 2d 848; see, also, Restatement, Second, Contracts [Tent. Draft No. 1, 1964], § 64, subd. [b]; 1A Corbin, Contracts [1963], § 264; 1 Williston, Contracts [3d ed., 1957], § 87.) However, in view of the fact that the plaintiff had actually received notice before it took any steps to find another tenant or to lease the space, the Appellate Division was fully warranted in holding for the defendant by applying the principle that a tenant should be relieved of its default when its failure to give the requisite timely notice of renewal of its lease  or to perform some other condition precedent to renewal  has neither harmed nor prejudiced the landlord and was not due to bad faith. (See Jones v. Gianferante, 305 N.Y. 135; Rizzo v. Morrison Motors, 29 A D 2d 912; Ringelheim v. Karsch, 112 N. Y. S. 2d 130; Application of Topp, 81 N. Y. S. 2d 344; see, also, 1 Corbin, Contracts [1963], § 35, p. 146; MacNeil, Time of Acceptance, 112 U. Pa. L. Rev. 947, 975; 1 Rasch, New York Law of Landlord and Tenant and Summary Proceedings [1950], 1970 Supp., § 210, p. 116; 1 Williston, Contracts [3d ed., 1957], § 76, p. 249, n.) In the Jones case (305 N.Y. 135, supra), there was some question whether the tenant was required, by the lease, to give notice of exercise of his option. The court, though, elected not to decide that issue, choosing instead to hold that, even if notice had been required, the Appellate Division properly exercised its discretion in giving the tenant "the benefit of the rule or practice in equity which relieves against * * * forfeitures of valuable lease terms when default in notice has not prejudiced the landlord, and has resulted from an honest mistake, or similar excusable fault" (305 N. Y., at p. 138).[1]
*453 In the present case, too, the Appellate Division was justified in invoking that rule. Since a long-standing location for a retail business is an important part of the good will of that enterprise, the tenant stands to lose a substantial and valuable asset. Moreover, as is conceded, the landlord did not suffer any damage or prejudice because of the delay resulting from the nondelivery of the defendant's letter. It is important to bear in mind that the difficulty in which the defendant finds itself is not owing to any willful or deliberate act or omission on its part. Its plight stems solely from the Post Office's failure to deliver its letter which, in normal course, would have been received in ample time to effect the renewal. If reliance on the mails could possibly be characterized as fault, it is "excusable fault" (Jones v. Gianferante, 305 N.Y. 135, 138, supra) and should not operate to deprive the defendant of a valuable asset.
Not alone authority but a sense of justice and fairness support the decision that the defendant should be deemed to have exercised his option to renew.
The order appealed from should be affirmed, with costs.
JASEN, J. (dissenting).
I dissent and vote to reverse.
In this landlord-tenant dispute, submitted to the court upon an agreed statement of facts, we are asked to decide whether the tenant effectively exercised an option to renew a lease for an additional five-year term.
The lease provides that the tenant shall have the option to renew for an additional period of five years, "provided * * * that such option to renew * * * be given by the Tenant to the Landlord herein in writing on or before March 31, 1969" (emphasis added).
In order to effectively renew the lease, the tenant was required, as a condition precedent, to give written notice of the exercise of option to the landlord on or before March 31, 1969. No rights to a renewal of the lease would come into being until the tenant performed such condition precedent. (Fidelity & Columbia Trust Co. v. Levin, 128 Misc. 838, affd. 221 App. Div. 786, affd. 248 N.Y. 551; *454 Application of Topp, 81 N. Y. S. 2d 344; Ocumpaugh v. Engel, 121 App. Div. 9.)
Of importance here is that the term of the lease between the parties was for a definite five-year period, to expire on June 30, 1969. At the time the lease was executed, no further or greater estate existed. However, the unilateral right to create a new estate for five additional years, by properly exercising the option to renew, was given to the tenant. But such new estate did not, and would not, come into being until the performance by the tenant of the condition precedent  exercising his option to renew within the time specified in the lease.
To be sure, conditions precedent, like any other terms of a contract, may be obviated by estoppel, waiver, abandonment, fraud, rescission or valid modification. (Restatement, Contracts, §§ 294-304.) But, there is no claim such an issue exists in this case.
The tenant concedes that the landlord did not receive the notice "on or before March 31, 1969", but argues that the mere mailing of the notice within the period specified constituted full performance of its obligation to give notice.
Such an argument is clearly not supportable. The rule of law applicable to the situation before us has been well settled, not only in our State, but in many other jurisdictions. The rule is that where a contract requires notice be given before a certain date, but does not specify the means by which notice is to be given, the mere mailing of the notice is not sufficient unless it is received within the time specified. (Boyce v. National Commercial Bank & Trust Co., 41 Misc 2d 1071, affd. 22 A D 2d 848; Sasmor v. Vivaudou, Inc., 200 Misc. 1020; 1 Williston, Contracts, § 87, p. 281; 1A Corbin, Contracts, § 264; 66 C. J. S., Notice, § 18, p. 663.) And as observed in the Restatement, Second, Contracts (Tent. Draft No. 1, § 64, subd. [b], p. 271): "Option contracts are commonly subject to a definite time limit, and the usual understanding is that the notification that the option has been exercised must be received by the offerer before that time. * * * [T]he offeree takes the risk of loss or delay in the transmission of the acceptance". (Emphasis added.)
*455 Since actual receipt of notice was required, and concededly such notice was not received by the landlord within the time specified in the lease, the option was not properly exercised by the tenant. (See Scott-Burr Stores Corp. v. Wilcox, 194 F.2d 989, 990-991 [5th Cir.]; Wheeler v. McStay, 160 Iowa 745, 749-750; Starr v. Holck, 318 Mich. 452, 457; Hoban v. Hudson, 129 Minn. 335, 338-339.)
Of course, equitable relief may be invoked to relieve a tenant of its default where the facts and circumstances warrant same. But, I do not agree with the majority that equity should intervene under the stipulated facts in this case.
It is well established that equitable relief should be granted only as a matter of sound judicial discretion. As Mr. Justice STORY stated in his treatise, Equity Jurisprudence (1st ed., vol. 2, § 742): "[Equitable relief] is not a matter of right in either party; but is a matter of discretion in the Court: not of arbitrary or capricious discretion, dependent upon the mere pleasure of the Judge, but of that sound and reasonable discretion, which governs itself, as far as it may, by general rules and principles".
In the leading case of Jones v. Gianferante (305 N.Y. 135, 138), we recognized the existence of the rule "in equity which relieves against such forfeitures of valuable lease terms when default in notice has not prejudiced the landlord, and has resulted from an honest mistake, or similar excusable fault." In order to invoke the relief authorized in Jones, it is incumbent upon the party to establish that (1) there was an honest mistake or similar excusable fault; (2) by the tenant, and (3) no damage to the landlord. It should be noted that in Jones there was an ambiguity in the lease, and that the failure of the tenant to exercise his option resulted from this ambiguity. The existence of an ambiguity, however, was not the controlling factor. Rather, it was one of the circumstances considered in determining whether equitable relief would be invoked. Nor is the fact that the landlord suffered no harm, in and of itself, the determinant factor.
There must be, as stated in Jones, in addition to lack of harm or prejudice to the landlord, "an honest mistake, or similar excusable fault".
*456 I cannot agree with the majority's conclusion that the tenant's default in notice is an "excusable fault" merely because of "the Post Office's failure to deliver its letter".
The tenant was not bound to use the mail to transmit the notice of removal, but in selecting this means of communication, assumed the risk inherent therein. Certainly this is not the kind of "excusable fault" to which one is entitled to equitable relief. (See 1 McAdam, Landlord and Tenant, § 156, and cases cited therein; 2 Pomeroy, Equity Jurisprudence [5th ed.], § 453-b; Bluthenthal v. Atkinson, 93 Ark. 252; McGrory Stores Corp. v. Goldberg, 95 N. J. Eq. 152.)
Moreover, the tenant's default in notice cannot be considered an accident, since this "accident" was avoidable. The tenant could have delivered the notice through one of its officers or a messenger service.
To hold that equity will intervene when a tenant mails his notice of renewal, regardless of whether or not the landlord actually receives it, so long as the landlord is not harmed thereby, fails to take into account the likely effects of such a holding. Not only would the precise terms of the lease be avoided, leading to endless litigation, but also innumerable schemes of fraud could be invoked. In transactions, such as the renewal of a valuable lease, the results would be chaotic in the commercial world. (Cf. Seagirt Realty Corp. v. Chazanof, 13 N Y 2d 282.)
In sum, then, it is my conclusion that the court should hold both parties to the clear and unambiguous terms of the lease agreement and apply the standards of equitable relief as set forth in Jones v. Gianferante (supra).[1] To do otherwise, seriously undermines a long-settled rule of law intended to protect parties to a contract from dishonest or afterthought claims.
*457 In 1858, an English Judge, dealing with the exercise of sound judicial discretion, opined very aptly: "It is most important that the profession, and those who have to advise in reference to this subject, should understand the rule which is adopted in this and the other Courts, which is, that the discretion of the Court must be exercised according to fixed and settled rules; you cannot exercise a discretion by merely considering what, as between the parties, would be fair to be done; what one person may consider fair, another person may consider very unfair; you must have some settled rule and principle upon which to determine how the discretion is to be exercised." (Haywood v. Cope, 25 Beav. 140, 151.)
Order affirmed.
NOTES
[1] Williston and the other commentators  to whom we have already referred  are even more explicit. This is what Williston has written about the matter (Contracts, vol. 1, § 76, p. 249, n.):

"where an option is contained in a lease or other contract involving an estate in land, some courts of equity, especially in recent years, have tended to view the offer as not automatically lapsing on expiration of the option period, as for instance, in case of renewal of a long term lease, where to do so would involve substantial forfeiture and the lessor has not materially changed his position in reliance on the optionee's failure to exercise his option within the stated time."
[1] The footnote of Williston referred to by the majority is not indicative of his views as to the propriety of equitable intervention. Rather, it is merely a summary of the holdings of three of these cases  two from Connecticut and one from West Virginia. An analysis of these cases clearly shows that they involve factual situations which obviously warranted equitable relief. For not only in those cases was there "excusable fault," but also in each one the tenant had made substantial improvements, a factor not present in the instant case. Thus, on the undisputed facts of this case, I do not believe that the statement can be considered in support of the majority's position.