Leonard Leigh Finz, J.
This is an application for a stay of arbitration under the uninsured motorist provision contained in the policy issued by the petitioner to the owner of a motor vehicle in which the respondent Newsome was a passenger on April 25, 1975 when there was a collision with a taxicab owned by All Round Taxi Corp. The petitioner claims that at the time of the accident the taxicab was insured by Buffalo Insurance Company under a one-year policy which had its inception on December 31, 1974. Buffalo claimed that its insurance policy was canceled on February 23, 1975 by a cancellation notice sent to the insured by Broadway Bank and Trust Company, which was the assignee of a finance company which had financed the payment of the premium due on the said policy.
The papers submitted in support of the application read like *944 a compendium of all of the objections which may be raised against a cancellation notice to prove that it was ineffective. Perhaps this is properly so since it has been said that strict compliance with the applicable statutes is required to cancel a policy. (Messing v Nationwide Ins. Co., 42 AD2d 1030; Government Employees Ins. Co. v Mizell, 36 AD2d 452; Orisini v Nationwide Mut. Ins. Co., 35 AD2d 238, which cited Motor Vehicle Acc. Ind. Corp. v Davidson, 56 Misc 2d 246.) This is especially true where the premium has been financed, since section 576 of the Banking Law imposes additional requirements which must be followed and since, if the policy is not effectively canceled, it continues in full force until its expiration date. (Matter of Ottey [Motor Vehicle Acc. Ind. Corp.], 71 Misc 2d 164, affd 39 AD2d 874.)
The first objection raised was to the effect that the actual effective date of cancellation typed on the notice was February 19, 1975, but that this date had been changed by hand to February 23, 1975. The petitioner infers that the insured must have received a copy of the cancellation notice without the alteration, although the insured was not present in court at the hearing and the copy received by the insured was not produced. The change in date is important because it relates to the requirement in section 370 of the Vehicle and Traffic Law that such cancellation notice be filed at least 20 days prior to the effective date. The testimony of the witness produced by Buffalo, an employee of Royal Facilities, General Agent of Buffalo Insurance Company, was that all of the copies were changed by hand prior to mailing and filing. An exhibit furnished by Buffalo and submitted in evidence by the petitioner, a receipt for the afore-mentioned cancellation notice, was date-stamped January 31, 1975 in the mail room of the Department of Motor Vehicles in Albany. Accordingly, it must be considered that a copy of the cancellation notice was duly filed with the Department of Motor Vehicles at least 20 days before the effective date of the cancellation notice as required by section 370 of the Vehicle and Traffic Law.
The petitioner similarly raises the question of the mailing of the cancellation notice, citing Caprino v Nationwide Mut. Ins. Co. (34 AD2d 522). The court in that case stated, "The presumption of the delivery of the notice does not arise until adequate proof of mailing has been adduced.” The court then cited a decision of the Third Department which it regarded as decisive, Boyce v National Commercial Bank and Trust Co. (41 *945 Misc 2d 1071), and discussed the facts and circumstances as between Caprino and Boyce. In the instant case, however, no serious question arises as to the mailing, since the witness was present and sufficient proof was adduced to show that there was a proper mailing and filing of the cancellation notice and its copies.
The petitioner next turns its attention to the contents of the notice, claiming first of all that the cancellation notice was not in accordance with the requirements of section 576 of the Banking Law. This section requires certain procedures be followed in the cancellation of a policy when the premium is financed. Paragraph (a) of subdivision 1 requires, inter alia, that there be unconditional written notice of the exact time and date of cancellation. Examination of the cancellation notice reveals the following:
The first portion of the paper contains the words "Notice of Default”. While this section contained the policy number, there was set forth an "Expected return premium” and an amount. There also appeared the words "Pay this amount”, which was left blank, and the words "Payment must be received by ___ in order to avoid cancellation”. No date was inserted. Immediately below this portion, however, appears a box within which there was typed an "x” and which reads, "If checked: the following provision applies”. There then appears in large block letters the words "Cancellation Notice”. After that appears the original date of notice, January 24, 1975, and the effective date of cancellation is "2/19/75 At 12:01 a.m. Standard Time”. The "19” was changed to "2/ 23” as above indicated. Below that there appear the words "You are hereby notified that your policies listed above are cancelled as of date shown above, subject to policy terms and conditions. These policies are cancelled by us in accordance with the authority which you have given us in consideration of our financing the premiums.” In view of the foregoing description of the physical appearance of the cancellation notice, the court must reach the conclusion that this was precisely such an unconditional written notice of cancellation as is required by section 576 (subd 1, par [a]) of the Banking Law.
The next objection raised by the petitioner was that the notice with regard to proof of financial security required by section 576 subd 1, par [c]) of the Banking Law was not complied with in that the notice was not printed in 12-point *946 type. (Nationwide Mut. Ins. Co. v Liberty Mut. Ins. Co., NYLJ, Mar. 31, 1976, p 8, col 3.) The case cited, however, indicated that the notice required as to proof of financial security was not contained in the cancellation notice. "Cancellation notices must contain all information required by statute and failure to include the mandated information renders such notice fatally defective (see Govt. Emp. Ins. Co. v. Mizell, 36 A.D. 2d 452).” The point of this citation by the petitioner eludes the court since obviously the notice with regard to proof of financial security was clearly set forth in this case. To prove its contention, nevertheless, the petitioner produced at the hearing an expert witness with long experience in the printing business. At the outset of his testimony, this witness stated that he could not tell with the naked eye if this portion of the cancellation notice was 12-point type. He further stated that 12-point type could vary from manufacturer to manufacturer, presumably referring to the manufacture of type. He indicated further that there are approximately 70 "points” to an inch, which would tend to bear out this witness’ assertion that it was difficult to tell with the naked eye the precise size of the type. Finally, the witness indicated that he thought that the type on the cancellation notice might be 10-point type. In view of the witness’ uncertainty, however, the court must conclude that the petitioner had failed to prove a lack of compliance by Buffalo with respect to the size of the type. The type appears to the court to be bold enough so that it may not be overlooked, and in view of the lack of precise definition by the expert, the court considers the size of the type to be in compliance with the legal requirement.
The petitioner then moves to the claim that the assignee of the lender which financed the premium may not cancel the policy. (Gordon v Nationwide Mut. Ins. Co., 37 AD2d 265.) This case indicates that there was no power of attorney granted to the party who attempted cancellation of the policy. It merely gave the lender the right to request cancellation by the insurance company. The petitioner also cites Matias v Government Employees Ins. Co. (NYLJ, May 2, 1975, p 18, col 8). That case, however, contains the following language: "Then there appears the later case of Sweers v Malloy, 28 AD2d 955, (3d Dept.) which without reference seems to distinguish the pronouncement in Teeter by permitting a finance company the right to cancel on behalf of the insured, but only if such right is contained in the financing agreement.” (The reference *947 is to Teeter v Allstate Ins. Co., 9 AD2d 176, affd 9 NY2d 655.) The finance agreement was made with Broadway Premium-Computer Service Center, Inc. The agreement recites among its conditions that "the payee, or its assignee, is hereby authorized irrevocably to cancel said policies”. In very explicit terms, therefore, the assignee was granted the right to cancel the policy for nonpayment of the installment due on the sum advanced for the premium.
The finance agreement in all of its provisions is replete with references to the Broadway Bank and Trust Company and its rights and remedies in the event of default. The petitioner, by contending that the insurance policy could not be canceled by an assignee, tacitly agreed that the finance agreement had been appropriately assigned. Accepting the fact of such assignment and the authorization by the borrower contained therein, the bank had the legal right to issue a cancellation notice.
On all of the objections raised by the petitioner, petitioner asserts that the burden of proof falls upon the assured, citing Allstate Ins. Co. v Gross (27 NY2d 263). This case, however, does not appear to this court to sustain the petitioner’s position. It relates purely to the operation of subdivision 8 of section 167 of the Insurance Law relative to the giving of written notice as soon as is reasonably possible, of a disclaimer of liability. Moreover, it would appear from a reading of this case that the burden of proving the reasonableness of the time within which such disclaimer was made would fall upon the party disclaiming. Thus, on each of the issues raised by the petitioner, it would appear that the petitioner would have the burden of proving a failure of compliance with the requirements of the law regarding the cancellation of an insurance policy by a party to a finance agreement or its assignee.
Lastly, the petitioner raises in defense of its position the failure of the respondent to notify the insurance company within 90 days of the occurrence of the accident. Actually, the provision referred to requires such notice within 90 days "or as soon as practicable”. In this case the attorney for the respondent had made three inquiries of the Department of Motor Vehicles concerning the insurance of the other vehicle involved in the accident. The first two inquiries elicited the information that the Buffalo Insurance Company insured the vehicle. It is quite evident that the attorney was dissatisfied *948 with this information or was informed otherwise, since the last request was answered on September 30, 1975, indicating that the All Round Taxi Corp. and its driver were "not covered by financial security on the date of the accident”. In this regard, therefore, it must be held that the respondent had fully complied with the terms of the policy.
The application for a stay of arbitration is denied with costs to the respondent and to the Buffalo Insurance Co. in the sum of $40 each.
(On reargument July 30, 1976)
This motion reached this part July 26, 1976. Petitioner moves under CPLR 4404 (subd [b]) that the court set aside its decision made May 11, 1976, denying petitioner’s motion for a permanent stay of arbitration and for an order granting its motion.
The hearing held by this court toward the ultimate disposition of the motion to stay arbitration was not a "trial” as contemplated by CPLR 4404.
As such, CPLR 4404 does not apply to the decision herein but rather to a decision or judgment entered after a trial (Matter of Ball, 43 Mise 2d 1032, affd 23 AD2d 820).
Since, however, this was in the nature of a special proceeding initiated by motion (CPLR 7502) the court will treat this motion as an application for leave to reargue. Accordingly, the motion to reargue is granted. Upon such reargument, however, the original decision is adhered to. The "fact” to which the petitioner refers is not as material to the issue herein as was inferred. Section 370 of the Vehicle and Traffic Law provides inter alia:
"A personal surety upon a bond filed pursuant to this section or a corporate surety or an insurance company evidence of whose bond or policy has been so filed, may file a notice in the office of the commissioner that upon the expiration of twenty days from such filing such surety will cease to be liable upon such bond, or in the case of such insurance company, that the expiration of such time such policy will be cancelled.” (Emphasis added.)
The. notice, it will be observed, is given to the commissioner, who then shall specify a date by which the insurance must be replaced. Thus the changing of the date of cancellation worked no prejudice to the insured and did not affect the cancellation.