Donna R. MAHARAN, Plaintiff,

v.

BERKSHIRE LIFE INSURANCE CO., Defendant.

No. 97–CV–823C.

United States District Court, W.D. New York.

Aug. 21, 2000.

Gross, Shuman, Brizdle & Gilfillan, P.C. (Robert J. Feldman, of counsel), Buffalo, NY, for plaintiff.

Damon & Morey, LLP (Thomas J. Drury, of counsel), Buffalo, NY, for defendant.

## INTRODUCTION

CURTIN, District Judge.

Plaintiff commenced this action seeking to recover the proceeds of two life insurance policies under theories of Breach of Contract and Unjust Enrichment. Defendant moves to dismiss the complaint pursuant to Fed.R.Civ.P. 56. Items 14–16, 23. Plaintiff opposes defendant's motion and has filed her own cross-motion for a judgment in her favor. Items 18–21. Oral argument was heard on May 19, 2000.

## BACKGROUND

### I. Facts

Plaintiff is the daughter of the late Donald Maharan, an architect of some local renown. In 1987, Mr. Maharan purchased three separate disability insurance policies (the "disability policies") from defendant Berkshire Life. The total cash benefit of the policies was $5,000 per month. Shortly thereafter, Mr. Maharan also purchased from defendant two life insurance policies valued at approximately $100,000 each. Mr. Maharan's mother, Vera London, was named the primary beneficiary to both of the life insurance policies, with plaintiff listed as the contingent beneficiary.

During this same time period, Mr. Maharan also purchased a third life insurance policy from defendant. He named his then-wife Patricia as the beneficiary of this third policy, for which the exact value is neither certain nor relevant. This policy is unrelated and wholly separate from the life insurance policies at issue in the present case.

On or about March 15, 1990, plaintiff discovered that his business partner and longtime friend had embezzled more than $1 million from their current business project. This revelation devastated Mr. Maharan and caused the demise and eventual collapse of his once-prominent architecture and development firm. Mr. Maharan never recovered from his friend's deceit. He became dejected and depressed to the extent that he was unable to work. On one occasion, Mr. Maharan threatened suicide. Shortly thereafter, Mr. Maharan filed a claim under the disability policies he had purchased from defendant in 1987 and 1988. Defendant paid plaintiff $10,000 on those policies before canceling them and demanding repayment.

Mr. Maharan filed suit in New York State Supreme Court challenging the legality of the cancellation and defendant's demand for repayment of the $10,000. On February 16, 1993, Berkshire Life removed the action to this court. *See Maharan v. Berkshire Life, Inc.*, 93–135C, August 28, 1996.

During the course of that litigation, Mr. Maharan suffered severe financial hardships and was unable to pay his bills, including the premiums on the two life insurance policies to which plaintiff was a contingent beneficiary. As a result, Mr. Maharan assigned ownership of the life insurance policies to the respective beneficiary, Vera London.

Due to her limited financial resources, Ms. London failed to pay the premiums on the policies. As a result, the life insurance policies became past due and were eventually canceled as of December 28, 1994 for non-payment. *See* 14, Exhs. J–L.

Vera London died on February 22, 1996, and her son, Donald Maharan, died less than two months later on April 14, 1996.

On August 28, 1996, this court rendered a decision in *Maharan v. Berkshire Life, Inc.*, 93–135C, awarding Donald Maharan's estate full disability benefits of $5,000 per month from March 15, 1990, until his sixty-fifth birthday. The decision was later affirmed by the Second Circuit Court of Appeals on April 23, 1997; and as a result, defendant paid Mr. Maharan's estate $445,095.92.

## II. Procedural History

After Mr. Maharan's death, plaintiff attempted to collect the proceeds on the life insurance policies to which she believed she was the lone beneficiary due to Vera London's death in February 1996. Defendant refused to render such proceeds to plaintiff, claiming that both policies had been canceled for non-payment prior to Mr. Maharan's death. The denial prompted plaintiff to commence the present action in October of 1997, seeking recovery of the life insurance proceeds under theories of breach of contract and unjust enrichment.

## *DISCUSSION*

### I. Standard of Summary Judgment

Summary judgment is appropriate where a review of the record reveals that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the responsibility of identifying for the court the portions of the record which demonstrate the absence of any material facts. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir.1994) (citing *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the moving party has provided sufficient evidence to support a motion for summary judgment, the opposing party must "set forth specific facts showing that there is a genuine issue for trial." *Endico Potatoes, Inc., v. CIT Group Factoring*, 67 F.3d 1063, 1066 (2d Cir.1995) (quoting Fed. R.Civ.P. 56(e)). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Podell v. Citicorp Diners Club Inc.*, 112 F.3d 98, 100 (2d Cir.1997). The litigant opposing summary judgment must therefore bring forward some affirmative indication that his version of relevant events is not "fanciful." *Id.* at 100. Conclusory statements do not create triable issues of fact; and as such, the allegation is dismissed. *See Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 19 (2d Cir.1995).

"Entry of summary judgment indicates that no reasonable jury could return a verdict for the losing party." *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir.1991). When deciding a motion for summary judgment, courts "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *American Casualty Co. v. Nordic Leasing, Inc.*, 42 F.3d 725, 728 (2d Cir. 1994).

### A. New York Insurance Law § 3211(a)(1)

In the present case, defendant seeks summary judgment, arguing that under New York State Insurance Law § 3211(a)(1), the policies had legally lapsed for nonpayment prior to Mr. Maharan's death.

Section 3211(a)(1) provides in pertinent part that:

No policy of life insurance or non-cancelable disability insurance delivered or issued for delivery in this state ... shall terminate or lapse by reason of default in payment of any premium, installment, or interest on any policy loan in less than one year after such default, unless a notice shall have been duly mailed at least fifteen and not more than forty-five days prior to the day when such payment becomes due

Essentially, § 3211(a)(1) establishes two dates on which past-due insurance policies lapse. If the insurance company can establish that it notified the policyholder by mail that a premium payment was due within 45 to 15 days and the policyholder failed to pay the premium, then the policy lapsed for non-payment on the date of default. If the mailing of the premium due notice cannot be established, then the policy lapsed one year from the date of default.

Here, defendant argues that due to Ms. London's failure to pay the premiums, the policies lapsed on the date of default, which was December 28, 1994. In the alternative, defendant contends that even if § 3211(a)(1) prevents the policies from lapsing on December 28, 1994, the statute provides that the policies lapsed one year from the date of default, or December 28, 1995.

### 1. Lapse Date of December 28, 1994

■ A life insurance policy lapses on the date of default provided there is sufficient evidence to raise the presumption that cancellation or premium-due notices were delivered to the policyholder within the requisite time period. *Caprino v. Nationwide Mutual Insurance Co.*, 34 A.D.2d 522, 308 N.Y.S.2d 624 (1st Dep't 1970) (citing *De Persia v. Merchants Mutual Casualty Co.*, 268 A.D. 176, 49 N.Y.S.2d 324, *aff'd* 294 N.Y. 708, 61 N.E.2d 449). For the presumption of delivery to arise, an insurance company must provide proof that premium due notices were duly addressed and mailed pursuant to the standard office practice and procedure followed by the insurer in its regular course of business. *Clark v. Columbian Mutual Life Insurance Co.*, 221 A.D.2d 227, 228, 633 N.Y.S.2d 311, 312; *see also Nassau Insurance Co. v. Murray*, 46 N.Y.2d 828, 830, 414 N.Y.S.2d 117, 386 N.E.2d 1085 (Ct.App.1978). If the proof provided by the insurer is insufficient to establish a presumption of delivery, whether or not the policyholder received the cancellation notice constitutes a genuine issue of fact. *Clark v. Columbian Mutual Life Insurance Co.*, 221 A.D.2d 227, 633 N.Y.S.2d 311 (1st Dep't 1995).

■ New York courts have found two types of evidence sufficient to raise a presumption of delivery. *See Boyce v. National Commercial Bank & Trust, Co.*, 41 Misc.2d 1071, 247 N.Y.S.2d 521, 527 (2nd Dep't 1964). First, documentary proof that the premium-due or cancellation notices were duly addressed is acceptable to create the presumption provided that the documents include a "mailing list" stamped by postal authorities verifying that the notices were actually mailed. Absent such direct proof, documentary evidence is only sufficient to create a presumption of delivery if it is accompanied by testimony from an employee of the defendant who can attest to the standard office practice and procedure followed by the insurer in its regular course of business. *Clark*, 221 A.D.2d 227, 633 N.Y.S.2d 311.

■ Here, defendant submits both documentary evidence and deposition testimony from an employee regarding the mailing of the notices. However, the submissions viewed either individually or collectively fail to create a presumption of delivery.

The documents submitted by defendant include the daily list of billed premiums for December 1, 1994, the information which accompanied the Premium Due Notice forms, copies of Late Payment Offers generated for Mr. Maharan's life insurance policies sometime after December 28, 1994, and the Policy Activity Notices generated by defendant's computer system on or about March 10, 1995. *See* Item 14, Exhs. J and K. These documents all indicate that as of March 10, 1995, Ms. London had not paid the premiums on either life insurance policy, but none establish or even suggest that the various premium due or cancellation notices were actually mailed. Notably missing is the requisite mailing list properly certified by the postal authorities. As

such, the documentary evidence does not raise a presumption of delivery.

The deposition testimony of William Chandler, the Computer Systems Manager of Berkshire Life Insurance, is also insufficient proof on which to base a presumption of delivery. Mr. Chandler testified to the practices and procedures of generating various notices regarding life insurance policies. Specifically, Mr. Chandler testified that because he was able to recreate copies of the Policy Due Notices, Late Payment Offers, and Policy Change Notices referred to above, the original notices must have been generated back in December of 1994 and early 1995. Mr. Chandler, however, never contended that production of those documents is proof that the documents were mailed to Ms. London at her correct address. On the contrary, Mr. Chandler testified that "[t]he fact that I was able to reproduce the form using a backup of the file and system [for] that particular date indicates to me that the same report was produced in 1995, and I have every reason to believe that it would have been sent out." Item 23, Exh. P, Deposition of William Chandler at p. 121. Mr. Chandler's belief, however, is insufficient to establish the presumption of delivery, especially given his admission that in 1994 and 1995 he had no direct or personal knowledge of the procedure or practice implemented after the mail department collected the various notices from the Computer Systems Department. *Id.* at p. 20.

Thus, while Chandler's testimony and corresponding documents establish that the various notices were generated by defendant's computer system in December of 1994 and early 1995, the documents and testimony do not establish that the notices were actually mailed to Ms. London. Accordingly, defendant fails to establish the presumption that the notices generated by the Computer Systems Department were in fact delivered to Ms. London in 1994 and 1995, and as such, the delivery of the notices remains a genuine issue of fact.

*See Caprino v. Nationwide Mutual Insurance Co.*, 34 A.D.2d 522, 308 N.Y.S.2d 624 (1st Dep't 1970) (finding that presumption of delivery does not arise absent proof that an envelope addressed to a policyholder, containing notice of cancellation, was among the pieces of mail delivered to the post office); *Clark v. Columbian Mutual Life Insurance Co.*, 221 A.D.2d 227, 633 N.Y.S.2d 311 (1st Dep't 1995) (ruling that the presumption of delivery did not arise where the only evidence of mailing was testimony of an employee which merely verified the actual mailing procedures used, not whether the envelope contained a policyholder's cancellation notice, or whether the envelope was correctly addressed).

### 2. Lapse Date of December 28, 1995

As indicated above, § 3211(a)(1) provides that a life insurance policy cannot lapse less than one year after default unless proper notice of cancellation was mailed to the policyholder. Since defendant in the present case is unable to produce the requisite proof of mailing under § 3211(a)(1), the life insurance policies necessarily lapsed one year from the date of default, or December 28, 1995, approximately five months before the insured's death. *See Pinkof v. Mutual Life Ins. Co.*, 49 A.D.2d 452, 375 N.Y.S.2d 618 (2nd Dep't 1975); *see also Dobbs v. First Alexander Hamilton Life Ins. Co.*, 231 A.D.2d 959, 648 N.Y.S.2d 381 (4th Dep't 1996).

Given this determination, the issue becomes whether the lapse date of December 28, 1995 forces the dismissal of the present action. Defendant relies on the Fourth Department's holding in *Dobbs* to argue that dismissal is appropriate because the policies were not in effect at the time of Mr. Maharan's death in April of 1996. In *Dobbs,* as in the present action, a surviving child of the insured sought recovery on a policy that had defaulted for non-payment. Based on § 3211(a)(1), the court affirmed the lower court's finding that because the policy lapsed for non-payment prior to the

father's death, the surviving child's action for recovery lacked merit.

While plaintiff agrees that pursuant to § 3211(a)(1), the policies lapsed on December 28, 1995, she refutes defendant's assertion that her claims should be dismissed as a result. According to plaintiff, *Dobbs* and similar cases are inapplicable to the present case, because here the policy would not have gone unpaid but for defendant's breach of both her father's disability and life insurance policies. She further distinguishes the present action by claiming that dismissal of her claims will result in the unjust enrichment of defendant.

### a. Breach of Contract Claims
#### 1. Breach of the Disability Insurance Policies

■ Plaintiff claims that defendant's breach of her father's disability insurance policies caused the cancellation of the life insurance policies. According to plaintiff, had defendant honored the disability policy from 1990 until his death in 1996, Mr. Maharan would have had the financial means to pay the premiums on the life insurance policies; and thus, the policies would have never been assigned to Vera London, and never lapsed for nonpayment on December 28, 1995.

This argument is entirely speculative. There is absolutely no evidence that suggests that had Mr. Maharan properly received his disability benefits he would have retained the life insurance policies, or that the premiums on those policies would have been paid in a timely fashion. While plaintiff claims that Patricia Maharan's testimony establishes that her father would have retained the policies, a thorough reading of the testimony is to the contrary. Mrs. Maharan's testimony only establishes that Mr. Maharan suffered financial hardships after his disability insurance claim was denied. In fact, there is nothing in Mrs. Maharan's testimony that even suggests that had Mr. Maharan's disability claim not been denied, he would have used the disability proceeds to pay his life insurance premi-ums. Mrs. Maharan's testimony actually weakens plaintiff's argument, as it indicates that Mr. Maharan was indebted to a number of other creditors, creating the possibility that the disability proceeds would have been used to satisfy Mr. Maharan's other debts.

Plaintiff's reference to her own deposition testimony is equally unpersuasive. According to plaintiff, she received a telephone call from her father and grandmother in which they asked her to pay a premium on a life insurance policy. Item 14, Exh E, Deposition of Donna Maharan at p. 21. Plaintiff admits that she was on her way to work when she received the call, and neither agreed to make the payment nor learned the complete details of the request. *Id.* She claims that she asked her father to call her back at another time to discuss the matter, but he failed to do so. *Id.*

This testimony is too vague and too speculative to defeat defendant's motion for summary judgment. Plaintiff cannot recall the date and time of the phone call, nor can she attest that the request pertained to the life insurance policies at issue in this case. Moreover, although plaintiff's statements establish that Mr. Maharan and Ms. London were having financial difficulties, they are not conclusive evidence that had her father received the proceeds of his disability policy he would have refrained from assigning those policies to Ms. London and paid the premiums in timely manner.

Speculative and conclusory allegations, such as those upon which the plaintiff relies, are insufficient to withstand a motion for summary judgment. *See Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir.1995) ("[A] party may not 'rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment'") (quoting *Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986)).

### 2. Breach of the Life Insurance Policies

■ Plaintiff also alleges that defendant has breached the life insurance policies purchased by her father. According to plaintiff, at the time defendant canceled the life insurance policies, it actually owed her father monies for the disability proceeds it had wrongfully denied him. As such, plaintiff claims that defendant's cancellation of the life insurance policies for non-payment constitutes a breach of the policies, as the benefits due to Mr. Maharan under his disability policies effectively canceled the premiums Mr. Maharan owed to defendant for the life insurance policies.

This argument is entirely without merit. Whether defendant owed Mr. Maharan disability benefits when the policies were canceled cannot possibly constitute a breach of contract claim, because at the time the life insurance policies were canceled Ms. London, not Mr. Maharan, was the policyholder. Accordingly, the alleged debt owed by defendant to Mr. Maharan had no bearing on the cancellation of the policies, as it was Ms. London who had failed to pay the premiums.

### b. Unjust Enrichment Claim

■ Plaintiff's final argument against defendant's motion for summary judgment is that regardless of whether the policies were in effect at the time of her father's death, she is entitled to recovery of the polices' proceeds, because denial of payment will unjustly enrich the defendant. This claim is also premised on the argument that the life insurance policies lapsed because of defendant's wrongful denial of the disability benefits. According to plaintiff, had defendant properly paid her father the disability benefits he was entitled to, Mr. Maharan would have had the money to pay the premiums, and the policies would have been in effect at the time of his death. Under this theory, defendant's wrongful denial of the disability benefits led to defendant's cancellation of the policy; and thus, defendant's ability to deny the claims on the life insurance policies (as a result of the default) leaves defendant unjustly enriched.

As indicated above, this argument is entirely speculative. No one will ever know why Donald Maharan decided to assign his life insurance policies to his mother, Vera London. Nor will it ever be known whether he would have retained the policies and paid the premiums had he not been denied the disability benefits. It is, however, an uncontested fact that for whatever reason, the policies were assigned to London, and London failed to pay the premiums, causing the policies to default prior to Mr. Maharan's death. As such, plaintiff's unjust enrichment claim fails.

Based on the above, plaintiff fails to provide any evidence refuting the fact that pursuant to § 3211(a)(1), the policies lapsed as of December 28, 1995. Accordingly, the policies at issue were not in effect at the time of Mr. Maharan's death in May of 1996; and thus, plaintiff's claims for recovery fail. *See Dobbs* 231 A.D.2d 959, 648 N.Y.S.2d 381 (4th Dept. 1996).

### B. New York Insurance Law § 3211(d)

Given the court's finding that plaintiff's claims fail for lack of merit, it need not consider whether the present action was timely filed.

### *CONCLUSION*

For the reasons set forth above, defendant's motion for summary judgment is granted, and plaintiff's cross-motion for summary judgment is denied. The complaint is dismissed in its entirety, and the Clerk is directed to enter judgment in favor of the defendant.

So ordered.